## LOCKHART v. MOORE et al.—159 S. W. (2d), 438.

Middle Section.   December 23, 1941.

Petition for Certiorari denied by Supreme Court, February 28, 1942.

Joseph Higgins, of Nashville, for appellant Mrs. Lockhart.
Jeff D. Fults, of Tracy City, and Charles C. Moore, of Chattanooga, for appellee Chas. C. Moore.

CROWNOVER, P. J.   The original bill in this cause was filed by Mrs. May B. Lockhart against Charles C. Moore, the Hamilton National Bank, the New York Syndicate Corporation, the Freemont Coal Company, Thomas M. Lockhart (her husband), and W. C. Abernathy, trustee.

Mrs. Lockhart was formerly the owner of about 2,300 acres of coal lands in Grundy County, Tennessee, which she sold to the Juliana

Coal Company for a net consideration of $83,000, for which it executed its notes secured by a deed of trust. She then organized the New York Syndicate Corporation, a Florida corporation, having all the capital stock issued to herself, and she transferred said notes to it. The Juliana Coal Company later became insolvent and was adjudicated a bankrupt. It then owed $68,000 of the said notes. In the bankruptcy proceedings the Syndicate Corporation bid in the lands and some of the mining equipment. It was necessary for the Syndicate Corporation to have some money (about $4,500) with which to pay taxes, costs, and the amount bid on the mining equipment, therefore it issued $60,000 of first mortgage notes or bonds which it pledged to Charles C. Moore for a loan of $6,000. Moore borrowed $6,000 from the Hamilton National Bank, of Chattanooga, executing his own note and attaching the bonds as collateral. He paid over to the Syndicate Corporation $5,000 of said amount and paid to himself $1,000 on his attorney's fee. The Syndicate Corporation applied the $5,000 to the payment of taxes, costs, machinery, etc., and the trustee in bankruptcy executed a deed conveying the coal lands and fixtures to the Syndicate Corporation. Afterward the Syndicate Corporation conveyed the lands and equipment, subject to the mortgage, to the Freemont Coal Company, a Tennessee corporation that had been organized in order that the mines might be operated by Thomas M. Lockhart. The consideration for the sale was the issuance of stock of the Freemont Coal Company to Mrs. Lockhart and Thomas M. Lockhart, trustee. Afterward, in 1932, Mrs. Lockhart, Thomas M. Lockhart, the Freemont Coal Company and Charles C. Moore entered into a contract in which it was agreed, among other things, that the Freemont Coal Company would pay a $5,000 attorney's fee to Charles C. Moore that the Syndicate Corporation owed him in connection with the said bankruptcy proceedings, and that the bonds would be pledged to secure the same subject to the $6,000 note payable to the Hamilton National Bank.

The complainant Mrs. Lockhart asked the court, in said bill, to set aside and cancel the deed executed by the New York Syndicate Corporation conveying all its coal lands and property to the Freemont Coal Company, on the ground that said deed was executed by Thomas M. Lockhart, president, which action had not been authorized by a vote of the stockholders, and to declare invalid a contract entered into between herself, Thomas M. Lockhart, the Freemont Coal Company and Charles C. Moore to pay said Moore an attorney's fee of $5,000 and to pledge said bonds of the Syndicate Corporation that had been assumed by the Freemont Coal Company to secure the same, on the ground that she, the principal stockholder of the Freemont Coal Company, did not read the contract and did not understand the agreement.

A number of other allegations were made in the bill, but the foregoing are the only ones raised on appeal to this court.

Mrs. Lockhart asked for an injunction to restrain the foreclosure of the mortgage securing the bonds and for attachment of certain mining equipment alleged to have been removed by Charles C. Moore, attachment of the bonds, etc.

Charles C. Moore filed an answer denying most of the allegations of the bill and alleging that Mrs. Lockhart understood and approved all said transactions, and pleaded estoppel. He filed a cross bill and alleged that he had paid the note to the Hamilton National Bank and was entitled to be subrogated to its rights, and that he was entitled to an attorney's fee of $5,000 to be credited with $1,186.60 for mining equipment purchased by him from said Freemont Coal Company, and that the Freemont Coal Company was insolvent. He asked that his cross bill be filed as a general creditors' bill and for an injunction to restrain the Lockharts from removing coal, etc. He also asked for a receiver and prayed that the property be sold in satisfaction of said indebtedness.

The Chancellor decreed that the complainant Mrs. Lockhart's bill be dismissed, and that the cross-complainant Charles C. Moore recover the amount of the note paid by him to the Hamilton National Bank, together with the interest and costs of the cause, and that he also recover $5,000 as attorney's fee for services rendered, and that the deed of trust securing the collateral held by the bank as security for said note to the rights of which the cross-complainant was subrogated be foreclosed to satisfy this decree, but the judgment for said bank note be credited with $1,186.60, the value of the mining equipment purchased by cross-complainant Moore. Decree was accordingly entered against the Freemont Coal Company in favor of Moore for $4,099.40 and $6,675.00, making a total of $10,774.40, which amount was declared to be a lien upon said lands and the lands were ordered sold to satisfy the decree.

The complainant Mrs. Lockhart excepted to said decree and appealed to this court and has assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in holding that the deed executed by the New York Syndicate Corporation conveying all the corporate property to the Freemont Coal Company was valid.

(2) The Chancellor erred in holding that the contract of July 14, 1932 (in which the bonds were pledged to secure the payment of the $6,000 note and the $5,000 attorney's fee), was valid.

(3) The attorney's fee is excessive.

(4) The Chancellor erred in taxing the complainant with the costs.

None of the other defendants appealed or assigned errors.

The appellant Mrs. Lockhart in her brief states the following:

"Mrs. Lockhart was advised by her counsel that she should not undertake to defeat reimbursement to him for the amounts advanced by the bank and which he had subsequently taken up, and to con-

cede the correctness of the Chancellor's decree awarding a recovery of some $3800.00 and interest on the first obligation, but this must not be construed as any admission or concession that cross complainant should have a decree for the $5000.00 provided for in the contract of July 14, 1932."

The essential facts, as disclosed by the record, are as follows:

May B. (Mrs. Thomas M.) Lockhart owned, at the time of her marriage in 1908, coal lands near Freemont, in Grundy County, Tennessee.

Thomas M. Lockhart executed a quitclaim deed, on September 16, 1908, conveying to Mrs. May B. Lockhart any interest he might have in said lands by reason of their marriage.

Mrs. Lockhart afterward acquired other lands, and in 1927 owned seven tracts of land, containing about 2,300 acres, in Grundy County.

She sold these lands to the Juliana Coal Company, on May 30, 1927. The consideration was $100,000. After paying off certain liens, the coal company executed its lien notes, payable to Mrs. Lockhart, for $83,000, payable at the rate of $500 a month for a number of years and a larger amount afterward, which were secured by a deed of trust.

Before entering into this contract Mrs. Lockhart consulted Mr. Charles C. Moore, and he represented her at the time of the transaction.

Mrs. Lockhart organized in Florida, on December 2, 1927, a corporation named New York Syndicate Corporation and transferred the notes to it. She owned all the stock of the corporation, and it appears that it was organized solely for the purpose of holding these notes, as she did not want them in her name because she feared a law suit by a real estate agent for commissions. Charles C. Moore had no connection with the organization of this corporation.

It does not appear from the record that any minutes were kept by the New York Syndicate Corporation after the transfer of the notes to it.

Mr. Moore collected some of these notes as attorney for Mrs. Lockhart.

The Juliana Coal Company paid about $15,000 and then ceased to pay any more on the notes.

Mrs. Lockhart sent the rest of the notes, $68,000 to Moore for foreclosure. He started proceedings, but before the sale was held the Juliana Coal Company filed a petition in bankruptcy and enjoined the sale.

Moore and Thomas M. Lockhart filed in the bankruptcy proceeding a claim of the New York Syndicate Corporation. There was some controversy in the bankruptcy proceedings about the equipment the Juliana Coal Company had placed on the property.

At the sale of the land and mining fixtures the New York Syndicate Corporation through Thomas M. Lockhart became the purchaser. The

trustee in bankruptcy executed a deed on February 21, 1931, conveying the lands and fixtures to the New York Syndicate Corporation.

It was necessary for the Syndicate Corporation to have some money (about $4,500) to pay taxes and costs and also to pay for some machinery bid in at the bankruptcy sale by Thomas M. Lockhart in its name.

The New York Syndicate Corporation issued $60,000 of first mortgage notes or bonds, dated February 21, 1931, and executed a deed of trust conveying said lands to a trustee to secure the bonds. The deed of trust was signed by Thomas M. Lockhart, president.

Thomas M. Lockhart as president of the corporation executed an agreement pledging said bonds to Charles C. Moore in consideration that he should endorse the corporation's note for $6,000.

Moore borrowed $6,000 from the Hamilton National Bank, of Chattanooga, Tenn., and executed his personal note and attached these bonds as collateral.

He paid over to the Syndicate Corporation $5,000 of said amount and paid to himself $1,000 on his attorney's fee. The corporation applied the $5,000 in payment of taxes, costs, machinery, etc.

Soon afterward the Freemont Coal Company was incorporated in Tennessee and organized for the purpose of operating the coal mines on said lands.

Thomas M. Lockhart, as president of the New York Syndicate Corporation, executed a deed, on April 22, 1931, conveying to the Freemont Coal Company said lands and equipment for the consideration of $1 and other valuable considerations, subject to the $60,000 mortgage.

The minutes of the Freemont Coal Company show that a proposition was made to it by "Thos. M. Lockhart, Trustee, having acquired the control of all of the properties purchased by the New York Syndicate Corporation," to transfer to it said property, subject to the mortgage, in consideration of 1,000 shares of stock in the Freemont Coal Company, which was accepted.

The stock book of the Freemont Coal Company shows that on April 22, 1931, 600 shares of stock were issued to Mrs. May B. Lockhart, for which she receipted on that date, and that 400 shares were issued to Thos. M. Lockhart, trustee, on the same date, for which he receipted.

It does not appear that any minutes were kept of the Freemont Coal Company after this date, but it appears that the Freemont Coal Company, through Thomas M. Lockhart as president, has operated the mines ever since and the Lockharts have lived on the property and have spent all the proceeds of the Freemont Coal Company.

On July 14, 1932, a contract was entered into by the Freemont Coal Company, Mrs. May B. Lockhart and Thomas M. Lockhart on the one hand and Charles C. Moore on the other.

This contract gives a brief history of the transactions of the Juliana Coal Company, the New York Syndicate Corporation, and the Fre-

mont Coal Company, including the fact that the New York Syndicate Corporation had conveyed all its assets to the Freemont Coal Company. It is then agreed that Charles C. Moore shall borrow an additional $500 from the Hamilton National Bank for the use of the Freemont Coal Company; that he shall execute a new note at said bank for $6,000 (the note then at the bank having been reduced by payments to $5,500) ; that the $60,000 of bonds issued by the New York Syndicate Corporation and assumed by the Freemont Coal Company shall be pledged to secure the note, and that the bonds shall be held by the bank as trustee for security for the payment of the $5,000 attorney's fee to Charles C. Moore for services rendered by him to the New York Syndicate Corporation in connection with the bankruptcy proceeding of the Juliana Coal Company. It is further agreed that Chas. C. Moore shall have the option to accept stock in the Freemont Coal Company in payment of his fee. (This contract is exhibit No. 1 to Dorris deposition, pages 1-4.)

Thereupon a new note was executed by Moore to the Hamilton National Bank and $500 was paid over to Mr. and Mrs. Lockhart for the Freemont Coal Company.

It appears that the cross bill was not sustained as a general creditors' bill, but it further appears that the property is now not worth much, as it was assessed at only $3,670. Mrs. Lockhart testified that this is about the value of it.

Moore never exercised his option and refused to buy any stock.

The contentions of the appellant Mrs. Lockhart are: (1) The deed executed by the New York Syndicate Corporation, conveying all the corporate property to the Freemont Coal Company, is invalid because executed by Thomas M. Lockhart as president of the Syndicate Corporation without being legally authorized so to do by a vote of the stockholders. (2) The contract entered into, on July 14, 1932, between herself, Thomas M. Lockhart, and the Freemont Coal Company on the one hand, and Charles C. Moore on the other, by which the $60,000 of bonds issued by the New York Syndicate Corporation and assumed by the Freemont Coal Company were pledged, first, for the payment of a $6,000 note executed by Charles C. Moore, made payable to the Hamilton National Bank, and second, to secure the payment of a $5,000 attorney's fee to Charles C. Moore, was invalid because signed by her without reading it or knowing its contents.

1. This suit was brought by Mrs. Lockhart, the sole stockholder of the New York Syndicate Corporation, to cancel a deed of the corporation conveying away all of its property. The suit should have been instituted by the corporation.

The fact that Mrs. Lockhart held all the stock does not entitle her to maintain this suit. She should have requested the corporation to bring this suit, and if refused, then she should have called a stockholders' meeting, notifying the officers of that fact, and at that meeting

she should have elected new officers and have had a resolution passed directing that this suit be instituted, and it should have been instituted by the corporation.

A conveyance of all the property of a corporation can be legally authorized only by a vote of the stockholders. Parker v. Bethel Hotel Company, 96 Tenn., 252, 278-281, 34 S. W., 209, 31 L. R. A., 706.

Where an illegal sale of corporate property has been made by the officers of the corporation without authority, and the stockholders desire to have the conveyance cancelled, it is their duty to call a stockholders' meeting, elect new officers, and direct that suit be instituted in the corporate name. 1 Morawetz on Corporations (2 Ed.), secs. 239-253, 261; Rathbone v. Parkersburg Gas Co., 31 W. Va., 798, 8 S. E., 570; Vartanian, Tennessee Corporations, sec. 249; 18 C. J. S., Corporations, pp. 1280-1283, sec. 564.

There is no evidence that a delay for such action would have impaired their rights. 1 Morawetz on Corporations (2 Ed.), secs. 252, 253.

Mrs. Lockhart filed her bill almost nine years after the conveyance was made, but there is no evidence that the corporation had surrendered or forfeited its charter. Her whole suit is predicated upon the theory that the New York Syndicate Corporation is a live corporation and that she owns all the stock; that it owns the coal lands; and that the conveyance of the corporate property to the Freemont Coal Company was fraudulent and void. Her insistence is that the corporation now owns the property and that she owns the stock.

Nonuser of the corporate franchises does not dissolve the corporation. Parker v. Bethel Hotel Company, 96 Tenn., 252, 34 S. W., 209, 31 L. R. A., 706.

The New York Syndicate Corporation is a Florida corporation, and there is no evidence about the Florida laws. Florida is a common-law state and we must presume that the laws of Florida are the same as those of Tennessee, in the absence of a statute on the subject.

"Where the foreign law in an action is that of a common-law state, it will be presumed that the common law of the foreign state is the same as the common law of the forum, and if there is a statute changing the lex fori, the presumption will be that the foreign law is the same as that of the forum before the statutory change was made." Kennard v. Illinois Central Railroad Company, 177 Tenn., 311, 148 S. W. (2d), 1017, 134 A. L. R., 770.

This 'is borne out by the charter of the New York Syndicate Corporation, which contains the following provision in regard to disposition of the corporate property:

"Pursuant to the affirmative vote of the holders of at least a majority of the stock issued and outstanding, having voting power, given at a stockholders' meeting duly called for the purpose, or when

authorized by the written consent of the holders of a majority of the voting stock issued and outstanding, the Board of Directors shall have power and authority at any meeting to sell, lease or exchange all of the property and assets of this Corporation, including its good will and its corporate franchise, upon such terms and conditions, as its Board of Directors deem expedient and for the best interests of the Corporation.''

The minute book of the New York Syndicate Corporation, a loose-leaf book, does not contain minutes of any stockholders' meeting or board of directors' meeting authorizing and directing the sale. Mrs. Lockhart, the sole stockholder, testified that she had no notice of any such meeting and that the stockholders had not authorized a sale.

But the evidence further shows that Mrs. Lockhart ratified said transaction by accepting a majority of the stock of the Freemont Coal Company that was issued as the consideration for the conveyance by the Syndicate Corporation to the Freemont Coal Company, and later ratified all the acts of the officers of the two corporations when she signed the contract of July 14, 1932, and accepted $500, and she is therefore estopped to attack the deed by reason of having accepted with knowledge the said considerations. 14A C. J., 394, sec. 2246; 19 C. J. S., Corporations, sec. 1023; 3 Thompson on Corporations (3 Ed.), 806, sec. 2168; p. 726, sec. 2094; p. 725, sec. 2093.

2. The appellant Mrs. Lockhart's second contention is that she is not bound by the contract of July 14, 1932, in which the New York Syndicate Corporation's bonds were pledged as collateral to secure the $5,000 attorney's fee, because she did not read the contract and did not know its contents.

We think the preponderance of the evidence is that it was explained to her and she understood it at the time she executed the contract.

Also, she accepted the money borrowed from the Hamilton National Bank ($500) provided for in the contract, and thereby ratified it.

She admits that she signed the contract, but says she did not read it and did not know what its contents were. She does not charge that she was caused to sign it as the result of false representations or fraud. She could not escape liability on the ground that she negligently failed to read it, or to have it read to her if she was having trouble with her eyes. Federal Land Bank of Louisville v. Robertson, 20 Tenn. App., 58, 63, 95 S. W. (2d) 317; Berry v. Planters' Bank, 3 Tenn. Ch., 69, 75.

''A person who signs a written instrument without reading it, when he had ability and opportunity to do so, cannot afterwards complain that he did not know its contents. To state the rule more fully,— when a person can read English, and is so far in the possession of his

faculties that he can read and understand a written instrument at the time it is presented to him for signature, and is not in any way prevented or dissuaded from doing so, and is not tricked into signing it by any false representation or positive fraud, but nevertheless signs without reading, he is guilty of such negligence that he cannot obtain relief in equity upon afterwards discovering that the instrument is different from what he supposed it to be, or that it imposes obligations which he had not intended to assume, or is more onerous or disadvantageous than he expected it to be." Black on Rescission and Cancellation, 118, sec. 52.

"As a general rule a person cannot avoid a written contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document which he signed . . . In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence." 17 C. J. S., Contracts, pp. 487-493, secs. 137, 138.

The signing of this contract was also a ratification of all the foregoing transactions of these companies.

After a careful investigation of the record we are of the opinion that Mrs. Lockhart understood how her affairs were managed; that she put everything into the hands of her husband, Thomas M. Lockhart, and ratified his acts; and that he and Charles C. Moore acted in good faith in all their transactions and for the best interests of the New York Syndicate Corporation and the Freemont Coal Company.

The Chancellor rendered a decree, under Moore's cross bill, in his favor against the Freemont Coal Company, and that Company has not appealed from it.

A corporation must appeal as to a judgment against it, where it is the duty of the corporation to make defense, and the stockholders cannot assign errors for the corporation under such circumstances.

"A stockholder is so in privity with, and represented by, the corporation that he is bound by a judgment against the corporation in so far as it deals with corporate rights and liabilities and affects the stockholders as a body" (34 C. J., 1026, sec. 1457), and "as to all matters which the corporation urged, or might have urged, as a defense to the judgment against it." 18 C. J. S., Corporations, p. 1399, secs. 672, 673; 6 Thompson on Corporations (3 Ed.), sec. 4981. "But he is not bound in respect to individual rights and liabilities or rights and liabilities which are not common to all the stockholders." 34 C. J., 1026, sec. 1457; 18 C. J. S., Corporations, p. 1405, sec. 673, subd. d.

"In the absence of fraud and collusion, or want of jurisdiction, a judgment against a corporation is conclusive upon a stockholder as to all matters which might have been urged by the corporation as a defense thereto, such as the existence of the liability of the corporation, the amount of the liability, the validity of the claims, even though the stockholder had no notice of the proceedings against the corporation, and was not a party thereto, and although such stockholders are nonresidents of the state where the judgment was rendered." 14 C. J., 1061, sec. 1652; 18 C. J. S., Corporations, sec. 673.

Hence the judgment against the Freemont Coal Company must stand, and Mrs. Lockhart cannot attack it for the reasons hereinabove stated.

3. The third assignment, that the fee is excessive, is not well made for two reasons: first, because Mrs. Lockhart has no standing in court to attack the fee as it is a judgment against the corporation; and second, the corporation signed a contract agreeing to pay $5,000, and it has not assigned errors or attacked the amount.

4. It results that the fourth assignment, as to costs, must be overruled.

All the assignments of errors being overruled, it results that the decree of the Chancellor must be affirmed. A decree will be entered in this court in favor of Charles C. Moore and against the Freemont Coal Company for $10,774.40 with interest from March 1, 1941, to the present, which is declared to be a lien on the property, as decreed by the Chancellor. The costs of the cause and the costs of the appeal are adjudged against Mrs. Lockhart. The cause will be remanded to the Chancery Court of Grundy County for a sale of the property in accordance with the decree of the Chancellor and for such other orders as may become necessary in the disposition of the property and proceeds of the sale.

Felts and Howell, JJ., concur.