BEASLEY *v.* METROPOLITAN LIFE INS. CO.

(*Nashville,* December Term, 1949.)

Opinion filed March 17, 1950.

WILLIAM H. WOODS, of Nashville, for plaintiff in error.

MOORE & EWING, of Nashville, for defendant in error.

Mr. Justice Gailor delivered the opinion of the Court.

This appeal presents a suit at law for the principal sum on a policy of industrial life insurance issued by the Company on the life of the deceased husband of the Plaintiff. At the end of the Plaintiff's proof, on account of fraud and false statements made in the application for the insurance, the Trial Judge directed a verdict for the Defendant. On appeal, the Court of Appeals affirmed, and we granted certiorari.

The question presented is whether the rule in *Industrial Life & Health Ins. Co.* v. *Trinkle,* 185 Tenn. 434, 206 S. W. (2d) 414, that knowledge of the insurance agent is knowledge of the Company under Code, Section 6087, and that, therefore, knowledge of the agent is imputed to the Company, should be applied here, or whether the case falls within the exception applied in *DeFord* v. *National Life & Accident Ins. Co.,* 182 Tenn. 255, 185 S. W. (2d) 617, that where it is "plainly indicated" that there is fraud and conspiracy between the insured and the Company

agent, and that the agent will not reveal the true facts to his principal, no recovery on the policy will be permitted.

In the present case, one Sonnenfield was the agent of the Company, and he had known the Plaintiff and her husband for two or three years prior to the issuance of the policy. He called at Plaintiff's home from time to time, to collect premiums on another policy of insurance and knew the physical condition of Plaintiff's husband. He knew that during that time the insured was seriously ill with high blood pressure and kidney trouble; that he had been hospitalized; that this illness had begun in March, 1947, and continued through June 27, 1947, when the application for insurance was taken. We copy the following excerpt from the opinion of the Court of Appeals:

"Insured and his wife were intelligent people. He was a collector for a furniture company. During this time, when insured was sick, the agent was trying to sell him more insurance.

"On June 27, 1947, the agent came to the home of plaintiff and insured about supper time, five to six o'clock in the afternoon. Insured was sick at that time. He was dressed in pajamas and a robe. Under these conditions the agent took his application for the insurance. The agent wrote the answers to the questions. The application shows that insured stated that 'outside of' an occasional minor "colds" etc., no ailments whatever for so long can't remember;' no advice, treatment or examination in a hospital within five years; no ailments or disease within five years; no high blood pressure; and no kidney trouble. These answers were false and known to be false by the agent and by the insured at the time they

were given. The wife of insured states that insured gave the correct answers to these questions, and that the agent wrote them on the application incorrectly. At that very time, insured was seriously sick with high blood pressure and kidney trouble and was being treated by doctors at a hospital, although he was not confined to the hospital.

"The application provides:

" 'All of the foregoing answers are correct and complete to the best of my knowledge and belief and are made by me to induce the company to issue the policy applied for.'

"Upon the facts stated in this application, defendant issued the policy which provides:

" 'Subject to the foregoing provisions, if within two years prior to the date of issue of this Policy, the Insured has received institutional, hospital, medical, or surgical treatment or attention, and the Insured or any claimant under the Policy fails to show that the condition occasioning such treatment or attention was not of a serious nature or was not material to the risk, this Policy shall be voidable by the Company either before or after any claim, unless reference to such institutional, hospital, medical, or surgical treatment or attention is endorsed on this Policy by the Company; provided, however, that this Policy shall not be voidable because of absence of endorsement referring to any information which was disclosed in a written application for this Policy . . . .'

"Insured died within one year after this policy issued. It was an industrial policy. No medical examination was required. Upon learning the true facts concerning the physical condition of insured at the time the applica-

tion for insurance was taken, and at the time the policy was issued and delivered, defendant refused to pay the beneficiary the face amount of the policy, and this suit resulted."

The testimony of the Plaintiff is that on the evening of June 27, 1947, she was present in the room with her husband and the agent of the Company when the latter was writing out the answers to the questions on the application; that the agent read out the questions and that her husband answered them truthfully, but that without her knowledge the agent changed the answers to the questions, and that it was not until after the Company had refused to pay the insurance that she knew that the answers to these questions had been changed. She further testified that when the agent had completed the answers, he handed the application to her husband, who signed it without reading it. She further testified that when the policy was delivered, she accepted it but did not read it. Thereafter, from time to time, she had seen the agent and paid premiums to him.

So, at the end of the Plaintiff's proof we have this situation: The answers to the application are admittedly false, but according to the Plaintiff's testimony, neither she nor her husband knew that those answers were false; but it cannot be doubted that if the Company had known that the answers were false, it would never have entered into the contract, nor issued the policy, so much is clear from the language of the documents which are the basis of the contract and which we quoted above in this opinion. Plaintiff says her husband signed the false application but did not read it, though there was no fraud, duress, or disability to prevent his reading it, and the Plaintiff says she herself received the policy when it was

delivered, but she did not read it and knew nothing about its falsity until the Company refused to pay the claim.

 The following general rules of the law of contracts are amply supported by authorities cited in American Jurisprudence and Corpus Juris Secundum:

"To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." 12 Am. Jur., 629. "In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence." 17 C. J. S., Contracts, Section 137, pages 489, 490.

"It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law". *Upton* v. *Tribilcock,* 91 U. S. 45, 23 L. Ed. 203; *Berry* v. *Planters Bank,* 3 Tenn. Ch., 69; *Lockhart* v. *Moore,* 25 Tenn. App., 456, 466, 159 S. W. (2d) 438; *Federal Land Bank of Louisville* v. *Robertson,* 20 Tenn. App. 58, 63, 95 S. W. (2d) 317.

 The foregoing authorities deal with the phase of the law of contracts where one who has negligently signed a contract without reading it, seeks to avoid his obliga-

tion, but clearly the converse would be even more unjust and unreasonable,—that the Courts should impose an obligation, on an innocent Defendant who was led to make the contract on the careless misrepresentation of the Plaintiff and the insured. A verdict should have been directed for the Defendant on account of the misrepresentation and consequent mistake. Therefore, although we think the action taken should have been based on the grounds stated, rather than on the rule of *DeFord* v. *National Life & Accident Ins. Co., supra,* the result reached is correct and the judgment is, therefore, affirmed.

All concur·