LONNIE S. KILGORE et al.

*v.*

MILTON D. HIX et al.

(*Knoxville,* September Term, 1958.)

Opinion filed September 3, 1959.

Rehearing denied October 2, 1959.

H. KEITH HARBER and WALTER F. EMMONS, Chattanooga, for appellants.

GUS A. WOOD, JR., Chattanooga, for Beneficial Finance Co. of Chattanooga.

WHITAKER, HALL & HAYNES, Chattanooga, for Manufacturers Acceptance Corp.

DIETZEN, GRAHAM & DIETZEN, Chattanooga, for Milton D. Hix and Billy J. Hix d/b/a Hix Motors, William Appel and Hal Heideman, appellees.

566

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Mr. and Mrs. Kilgore seek to rescind on the ground of alleged fraud a conditional sales contract of purchase of an automobile from Hix Brothers, and cancellation of purchase money notes, etc. From the action of the Chancellor in sustaining the demurrer of each defendant, Mr. and Mrs. Kilgore have appealed.

The bill alleges that two salesmen of Hix Motors Company, who are also named as defendants, represented to Mr. Kilgore that General Motors, in an effort to avoid a sixty-four million dollar advertisement bill each year, had devised a plan where persons so desiring could obtain a new automobile "for no money", and assured him that the plan was operating successfully in 19 states and had been approved by an unidentified in the record Better Business Bureau and Chamber of Commerce. The plan, to quote the bill, was this:

"—that all that was necessary for complainants to do was to name six (6) persons who would qualify as participants along with complainants, and that any automobile complainants chose on the lot would be theirs free of charge. That the six (6) persons contacted by complainants and who would participate would likewise get a new automobile, and as each prospect was given a car, complainants' debt for their car would be reduced by One Hundred ($100.00) Dollars, that the six (6) participants obtained by complainants would likewise each obtain six (6) secondary participants. Said defendants assured complainants each of the secondary participants obtained their six (6) prospects that such person would first receive his new car and

complainants would then receive a Fifty ($50.00) Dollar reduction on the purchase price of complainants' vehicle for each of the secondary participants and their prospects until complainants' automobile was completely paid out."

As a condition precedent, Kilgore was required to, and did, procure license to sell for 12 months new automobiles exclusively for Hix; also Kilgore must become the owner of a new car sold by Hix. By so doing he became an "owner advertisement salesman representative" for Hix in accordance with the provisions of a written agreement. To become such a salesman, the aspirant must own one of Hix' automobiles.

Kilgore, in such capacity, entered into such written agreement with Hix. He therein agreed for a period of 12 months, in his capacity as "owner salesman representative", to submit to Hix the names of individuals who were prospective purchasers of Hix' brand of automobiles. He was to receive $100 for each name submitted "who thereafter becomes a qualified automobile owner salesman representative of Hix Motors". Further, for each name submitted by such secondary owner salesmen representatives who in turn became such owner salesman, Kilgore would be paid an additional $50. These payments were to be the sole consideration to be paid Kilgore for his services.

The agreement expressly provided that it shall go into effect "only after completion of the sale of the automobile to the salesman representative". Finally, it was provided that Hix was authorized to pay 75 percent of any amount so earned by Kilgore "to the balance due on the purchase price of the salesman representative's

automobile''; that is, the automobile to be purchased by Kilgore from Hix.

The foregoing agreement having been solemnly and formally entered into, Kilgore proceeded to pick himself out a car that cost $3,300. At that junction, so the bill alleges, he was told by the salesman that it would be necessary ''for temporary financing'', but ''purely a paper transaction'' for Kilgore to make a cash payment of $725 on this automobile he was to own ''for nothing''. This was managed by trading in his old car for a certain price and a borrowing of the balance of the $725 by a mortgage on his furniture to Beneficial Finance Company.

Further, as a part of this ''temporary financing'' and ''purely paper transaction'' he was to, and did, execute (1) a conditional sales contract retaining title to this car and (2) a purchase money note of $2,605, balance purchase price of the car.

Two or three days after the foregoing transaction was completed, the Kilgores, to borrow the language of their bill, ''upon reflection, complainants then determined that such a give away bargain could not possibly in fact work''; therefore, ''that he had been defrauded''.

Also named defendants in the bill were the aforementioned Beneficial Finance Company and Manufacturers Acceptance Corporation. It was sought to have their notes cancelled on the theory that they were parties to the alleged fraud. They also wanted back the car that they had traded in as a part of the cash purchase price.

The fraud charged to Manufacturers Acceptance Corporation is that it was to furnish Hix the names of persons whose notes had been negotiated to Manufacturers

Acceptance Corporation, and had been paid. That attributed to Beneficial Finance Company is that it knew the scheme to be fraudulent but had conspired to take loans on the furniture to promote the accomplishment of the fraud. It is also alleged that no Better Business Bureau or Chamber of Commerce had endorsed the plan, and that those promoting such scheme had been run out of several states.

There is no legal objection to either (1) the agency contract entered into by Hix and Kilgore, or (2) the mortgage on the furniture, or (3) the conditional sales contract and notes, in so far as the bill alleges. The agency contract simply provides that Kilgore is to be an automobile salesman for Hix and is to receive $100 or $50, dependent upon the facts, for each car sold through the direct or indirect efforts of Kilgore, and that 75% of this might, at the option of Hix, be credited on the automobile which Kilgore is required to purchase before the agency contract becomes effective. As to the furniture mortgage and purchase money note executed by the Kilgores, they simply agreed to pay as therein specified for the money borrowed, in the first instance, and for the purchase of the car, in the second instance. These are ordinary everyday transactions in the American business world.

██ The substance of the bill of Mr. and Mrs. Kilgore, in so far as it attributes fraud to Hix, is that it was agreed and understood by Hix and his salesmen that they, Mr. and Mrs. Kilgore, would not have to pay the notes or carry out the obligation expressed in the agency agreement. Such alleged oral agreement is wholly inconsistent with the terms of the written instruments as

pointed out by the Chancellor in his very thorough opinion. Applicable is the rule stated in *Litterer v. Wright,* 151 Tenn. 210, 212, 268 S.W. 624:

> "Parol proof of inducing representations to the making of a contract reduced to writing must be limited to matters not otherwise plainly expressed in the writing. No well-considered case will be found holding otherwise. The fundamental distinction should be kept clearly in mind between the denied right to contradict the terms of the writing, and the recognized right without so doing to resist recovery thereon, or to rely upon matters unexpressed therein."

Reference to Shepard's Citations reflects the fact that this holding has been cited many times in this, and other, jurisdictions.

The reason for the rule is well stated in *Beasley v. Metropolitan Life Insurance Company,* 190 Tenn. 227, 232, 229 S.W.2d 146, 148, as follows:

> "To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made * * * would absolutely destroy the value of all contracts."

That just said is conclusive of this case against all defendants. However, attention is called to a quite true observation of the Chancellor that:

> "No one in his right mind could expect to be given an automobile free for sending his friends to the automobile dealer for the purpose of also receiving new automobiles free. This Court does not believe that the complainants had any right whatsoever to rely upon any such alleged representations * * *."

In this connection, Mr. Kilgore says in his bill that upon thinking about the oral agreement as he, in his bill alleged it to be, he concluded that ''such give away bargain could not possibly in fact work.''

Directly in point is the rule stated in *Gilbert v. Hunnewell*, 59 Tenn. 289, 296, and cited in one of the briefs, as follows:

''In this view of the case, if the complainant, with the purpose of gaining this large sum, and thus driving a good bargain, refused to examine facts open to his investigation, and afterward found that in his eagerness to make $11,000 he had been the loser, and had been misled by want of knowledge of the facts of the case, he has only himself to blame, and does not stand in a position to invoke the aid of a court of equity to relieve him from the consequences of his own folly, the result of wilfully blind cupidity. He has but overreached himself, and must bear the consequences. Courts of equity, in the language of Mr. Story, Eq.Jur., Vol. 1, sec. 200, a, do not sit for the purpose of relieving parties, under ordinary circumstances, who refuse to exercise a reasonable diligence or discretion.''

Affirmed and remanded for such further proceedings as are necessary. Costs will be adjudged against the Kilgores.