IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 2, 2003 Session

## JANET LYNN DITZER v. CURTIS J. DITZER

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 89 DR 1146      Hon. W. Neil Thomas, III., Circuit Judge**

FILED JANUARY 16, 2004

**No. E2003-00707-COA-R3-CV**

The Trial Court ordered the father to pay one-half of the daughter's college expenses pursuant to the parties' Marital Dissolution Agreement, and reimburse the mother for one-half of expenses already paid. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR.,.J., and D. MICHAEL SWINEY, J., joined.

Grace E. Daniell, Chattanooga, Tennessee, for Appellant.

Janet Lynn Ditzer, Chattanooga, Tennessee, *pro se*.

**OPINION**

In this action the Trial Court held that the Marital Dissolution Agreement ("MDA") entered between the parties at the time of the divorce required the husband to pay one-half of their child's college expenses, and the Court also ordered the husband to reimburse the wife for college expenses already paid by the wife on behalf of the daughter. The husband appeals.

The parties were divorced in 1990, and their MDA was incorporated in the Final Decree. The MDA states in pertinent part "husband and wife agree to work cooperatively to provide as appropriate for the educational expenses of their child throughout her age of minority and thereafter, as they are financially able. They will also seek to cooperate in encouraging the child to

obtain appropriate loans, grants, scholarships, and other financial aid which may become available at the time appropriate for her to enter an institution of higher education." At trial in December 2002, the husband testified that his gross income per month was $4,821.00 base salary, and that he had also had overtime pay, and estimated his gross earnings for 2002 would be about $70,000.00. However, he felt his overtime would decrease in the coming months. He further testified that his wife worked and her salary was $28,000.00 per year.

Husband testified that he reviewed the MDA before going into court, but did not remember seeing the part about college expenses, and that he never read the paragraph on college expenses until it was brought up by the wife in her Petition.

The parties' daughter testified that she was 18 years old and was attending Wellesley College. She testified that she applied to several colleges, and her father refused to give her certain information requested by the colleges in their application. She further testified that Wellesley cost approximately $38,000.00 per year, and she had scholarships and grants for approximately $33,000.00 per year, and that she paid about $700.00 for her books for one semester, and transportation expenses, and that her father had not paid anything toward her college education.

The wife testified that during the pendency of the divorce, she and the husband went to a private mediator, and they discussed many issues, including college expenses. She testified that the mediator went over each item in the MDA with both parties, that the provision for college expenses was important to her, and reflected their agreement, which was that they would both work together to help the daughter go to college. Wife testified that they could not be more specific at the time because their daughter was only six years old at the time of the divorce.

She testified that she did not work in 2001, because she had a work-related accident, and was disabled. She testified that she was disabled for the majority of 2002, but went back to work in November. She said she worked 32-40 hours per week, and made $8.50 per hour, and that she received a settlement from worker's comp, which she used to pay her bills, and some of the daughter's expenses. She further said she could only make ends meet every month by using her workers compensation settlement benefits.

The wife testified that she had incurred expenses of over $10,000.00 for the daughter's college, and she itemized these amounts in her testimony. At the conclusion of the evidentiary hearing, the Trial Court held that it was clear from the language of the MDA that the parties agreed that the child should go to college, and that the expenses should be borne by both parties. The court found the mother had paid $7,400.00 in expenses so far, and ordered husband to pay one-half of that amount, or $3,700.00. The Court also ordered the husband to pay his remaining portion of the medical bills, in the amount of $515.00. The Court then deducted $690.00 that the wife had in escrow, and thus reduced the husband's obligation to $3,525.00. The Court said that future expenses, receipts or other proof of expenses would be required, and ordered that the husband could pay his one-half share of future expenses directly to the college.

On appeal, the husband argues there was no meeting of the minds regarding the disputed provision in the MDA, because there was no proof of any prior discussion about it, and he was simply presented with the MDA at the last minute and signed it without reading it. However, this argument ignores the wife's testimony, where she testified that they did discuss college expenses explicitly, and that they agreed they wanted the daughter to go to college, and that they would share expenses as they could to assist her.

As our Supreme Court has explained:

> To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts. In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn of its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences.

*Beasley v. Metropolitan Life Ins. Co.,* 229 S.W.2d 146, 148 (Tenn.1950).

We have held that, "In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and unjust. . . ". *Allied Business Brokers, Inc. v. Musa*, 2000 WL 33191373 (Tenn. Ct. App. 2000). Husband admitted that he freely and voluntarily signed this agreement, and he cannot be relieved of the obligation he willingly entered because he does not now like its terms.

We have previously held:

> One of the most basic rules of contract formation is that a person who signs a written document embodying an agreement with another party is bound by the terms of the signed agreement. This is true even if the person signing the document did not read what he or she signed. If, however, the document does not embody an enforceable agreement because material terms have been omitted, the courts must decide whether the missing terms can be supplied by operation of law or whether the parties simply never made a binding agreement. At this point, the focus of the inquiry devolves upon who supplies the additional terms, whether the additional terms are expressly or impliedly authorized, and, if applicable, whether enforcing the agreement as construed will affect the rights of third parties.

*Advantage Funding Corp. v. Mid-Tennessee Mfg. Co., Inc.*, 2000 WL 64118 (Tenn. Ct. App. 2000).

Husband also argues that the provision is unenforceable because it is too indefinite in its terms. As the cited case demonstrates, however, a contract can be enforced if the terms can

be supplied by implication.  Husband relies on *Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990), and quotes:

> To be valid and enforceable, ... a contract must be reasonably definite and certain in its terms so that a court may require it to be performed.  It must spell out the obligations of each of the parties with reasonable definiteness.  Indefiniteness as to any essential element of the agreement may prevent the creation of an enforceable contract.  Thus contracts must be definite enough to enable a court to ascertain just what is required of the respective parties in their performance thereof.  Courts will not uphold agreements which are indefinite and uncertain as to the obligations imposed upon the parties thereto.

The contract at issue in *Jamestowne* was an alleged oral agreement to loan money, and in *Jamestowne* the terms that were missing were such things as amount and duration of the loans, interest rates, and the methods of repayment and collateral for the loans, if any.  On that basis, this Court held the oral agreement to not be enforceable.

In this case, the terms of this provision are not so indefinite as to render it unenforceable.  The provision states that the parties "agree to work cooperatively to provide as appropriate for the educational expenses of their child throughout her age of minority and thereafter, as they are financially able."  The Contract imposes a duty upon the parties to help provide for their daughter's college education, as to the incurred financial obligation.  The husband argues that such terms as "work cooperatively", "provide as appropriate", and "as they are financially able" render the provision meaningless.  While such terms are not meaningless, they are ambiguous, and require the Court to look to parol evidence for construction.  *Jones v. Brooks*, 696 S.W.2d 885 (Tenn. 1985).

Husband testified that he did not discuss this provision in the agreement, but the wife testified that she and the husband specifically discussed college expenses when they mediated their MDA. The wife testified that both intended for the daughter to work, but they intended to help her with her college expenses.  She said that they were not specific because of the child's age and the uncertainty as to expenses and incomes.  From the Agreement and the testimony the Court determined that the parties intended to share equally with the college expenses incurred by their daughter,[1] and the Court obviously accepted the wife's testimony as credible on this issue which is particularly within the realm of the trial court's determination with respect to witness credibility.  *See, Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003).  We affirm the Trial Court's determination of this issue.

Finally, the husband argues the wife did not sufficiently prove the amount of money she spent on the daughter's college expenses because she did not produce receipts.  The wife, however, testified with specificity regarding the expenses she had incurred, and there is no indication they were unreasonable.  The evidence does not preponderate against the Trial Court's Judgment on

---

[1]The husband has the financial ability to pay his share of expenses.

this issue.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Curtis J. Ditzer.

_____
HERSCHEL PICKENS FRANKS, J.