# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
April 15, 2005 Session

## ALTON BOWMAN v. CHARLES WAGGONER, ET AL.

**Appeal from the Circuit Court for Smith County**
**No. 5248-B      Clara W. Byrd, Judge**

---

**No. M2004-00411-COA-R3-CV - Filed January 17, 2006**

---

This is an action by Alton Bowman seeking damages against Smith County Motor Company, Inc. arising from the purchase of two vehicles. Bowman claims damages based on alleged misrepresentations and fraud concerning his intent to purchase disability insurance when he purchased the vehicles. He contends he requested both disability and life insurance when he purchased the vehicles from the dealership, however, only life insurance was provided and the contracts executed by the parties at the time of the sale clearly evidence only life insurance was provided. Bowman suffered a stroke subsequently and when he attempted to file a claim for disability coverage he was notified he did not purchase disability insurance. Bowman filed suit seeking damages in the amount of the balance owing on the vehicles. The case went to trial and at the close of Bowman's proof, the dealership moved for a directed verdict on all issues, which the trial court granted. On appeal, Bowman contends the trial court erred by granting a directed verdict and by failing to grant a voluntary non-suit as to the issue of negligent misrepresentation. Finding there is no material evidence to support a verdict for Bowman, we affirm the grant of directed verdict. We also find that Bowman did not comply with Tenn. R. Civ. P. 41.01(1) by providing an unequivocal notice of dismissal in open court and, thus, affirm on this issue as well.

#### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., and DONALD P. HARRIS, SR. J., joined.

Jacky O. Bellar and Jamie D. Winkler, Carthage, Tennessee, for the appellant, Alton Bowman.

David Bass, Carthage, Tennessee, for the appellees, Charles Waggoner, Tim Tisdale, Lee Davis, and Smith County Motor Company, Inc.

**OPINION**

Alton Bowman purchased two new vehicles[1] from Smith County Motor Company in May of 2002. Prior to purchasing the vehicles from Smith County Motor Company (hereinafter Smith Motors), Bowman had shopped at another dealership. In talking with Tim Tisdale, an employee of Smith Motors, Bowman conveyed to Tisdale what the other dealership had offered. Bowman stated that he wanted to support local business, and thus he would purchase the vehicles from Smith Motors if it would match the other dealership's offer, which Bowman claims would provide both credit life and disability insurance.

Bowman claims he asked about the insurance several times during negotiations and that Tisdale agreed to provide both life and disability insurance if Bowman purchased the vehicles. Based upon Tisdale's representation, Bowman contends, he purchased the vehicles. Bowman agreed to purchase the vehicles from Smith Motors and the transaction was memorialized by contract documents prepared by Smith Motors, all of which Bowman signed. The contract documents expressly provide for life insurance, an application for which was part of the contract document, but not disability insurance. Bowman admits he did not read the contract documents prior to signing them but contends he relied solely on the oral representations made by employees of Smith Motors.

Less than two months after the purchase of the vehicles, Bowman underwent open heart surgery and while recuperating in the hospital suffered a stroke rendering him permanently disabled. Bowman's wife, subsequently, contacted Smith Motors to file a disability insurance claim for the remaining payments for both vehicles of $56,278.38. It was at this time she learned Bowman had not purchased disability insurance through Smith Motors. The parties engaged in discussions as to the disability insurance claim but a resolution was not reached. Thereafter, Bowman filed this action against Smith Motors.[2]

The case proceeded to trial and at the close of Bowman's proof, Smith Motors made an oral motion for directed verdict on all claims. Smith Motors argued that any agreement between the parties was contained in the four corners of the documents, Bowman had a duty to read them, they did not provide for disability insurance, only life insurance which was provided, and Bowman was bound by the contract documents he signed. The trial court granted the motion for directed verdict. As the trial court was explaining its ruling from the bench, counsel for Bowman interrupted the court stating that if the trial court was inclined to direct a verdict against Bowman he would take a voluntary non-suit as to the claim of negligent misrepresentation. A lengthy exchange between the trial court and counsel ensued, however, Bowman's counsel did not expressly or unequivocally provide oral notice of dismissal during the exchange or thereafter. At the conclusion of the

---

[1] Bowman purchased a 2002 Dodge truck and a 2002 Lincoln Continental.

[2] Bowman's initial complaint sought damages from Smith County Motor Company, Inc., and Charles Waggoner, Tim Tisdale and Lee Davis as agents of Smith Motors. Prior to trial, upon motion by the defendants, the trial court dismissed the individual defendants, leaving only Smith Motors. Bowman does not seek review of the dismissal of the individual defendants.

exchange, the trial court proceeded to complete its explanation of its ruling the result of which was a directed verdict as to all of Bowman's claims, including negligent misrepresentation. Bowman timely appealed raising two issues.

## STANDARD OF REVIEW

A motion for a directed verdict pursuant to Tenn. R. Civ. P. 50.01 requires the trial court to determine as a matter of law whether the evidence is sufficient to create an issue for the jury to decide. *Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171, 176 (Tenn. Ct. App. 1991). When considering a motion for directed verdict, the trial court must take the strongest legitimate view of the evidence and allow all reasonable inferences in favor of the non-moving party, while discarding all evidence to the contrary. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Dobson v. Shortt*, 929 S.W.2d 347, 349-50 (Tenn. Ct. App. 1996).

A directed verdict is only proper when reasonable minds could reach but one conclusion. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993). Accordingly, if there is a dispute as to material evidence or a doubt as to conclusions to be drawn from that evidence, the motion must be denied. *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995); *Souter v. Cracker Barrel Old Country Store, Inc.*, 895 S.W.2d 681, 683 (Tenn. Ct. App. 1994).

The standard of review on a motion for a directed verdict does not permit us to weigh the evidence, *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d at 647; *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992). Moreover, it does not permit us to evaluate the credibility of the witnesses. *Benson v. Tenn. Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). The standard requires that we review the evidence in the light most favorable to the motion's opponent, give the opponent the benefit of all reasonable inferences, and disregard all evidence contrary to the opponent's position. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McLain*, 891 S.W.2d at 590; *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 199 (Tenn. Ct. App. 1999).

## DIRECTED VERDICT

The trial court directed a verdict against Bowman on all issues at the close of his proof. The ruling was based on findings that Bowman had failed to prove fraud against Smith Motors and that Bowman failed to prove he sustained damages.[3]

Bowman testified that he requested disability and credit life insurance when he initially approached Smith Motors and that he asked Tim Tisdale about the insurance before signing the contracts. He further testified that Tisdale told him the insurance was part of the deal and acting in

---

[3]The latter was based on the trial court's finding that Bowman would not have been successful in his claim for disability insurance benefits due to material misrepresentations concerning his medical history made by Bowman on the application for insurance.

-3-

reliance on Tisdale's statement, Bowman signed the contracts without reading them. The contract documents, however, only provided that Bowman was purchasing credit life insurance.

Bowman's claim of fraud and misrepresentation is based on the contention he relied solely on oral representations of employees of Smith Motors and it was, therefore, reasonable for him to not read the contract documents. We find Bowman's contention to be without merit.

Our Supreme Court in *Beasley v Metropolitan Life Ins. Co.*, 229 S.W.2d 146 (Tenn. 1950) stated:

> 'To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.' 12 Am.Jur., 629. 'In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.' 17 C.J.S., Contracts, § 137, pages 489, 290

> 'It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law.' *Upton v. Tribilcock,* 91 U.S. 45, 23 L.Ed. 203; *Berry v. Planters Bank,* 3 Tenn. Ch., 69; *Lockhart v. Moore,* 25 Tenn. App., 456, 466, 159 S.W.2d 438; *Federal Land Bank of Louisville v. Robertson*, 20 Tenn. App. 58, 63, 95 S.W.2d 317.

*Beasley*, 229 S.W.2d at 148. Thus, the issue is whether or not Bowman was the victim of fraud. The trial court found no fraud on behalf of Smith Motors and we agree with the trial court.

Fraud occurs when a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him; the representation must have been made with knowledge of its falsity and with a fraudulent intent, it must also have been to an existing fact which is material, and the plaintiff must have reasonably relied upon that misrepresentation to his injury. *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62, 66-67 (Tenn. 2001); *Tartera v. Palumbo,* 453 S.W.2d 780 (Tenn. 1970); *Holt v. American Progressive Life Ins. Co.,* 731 S.W.2d 923, 927 (Tenn. Ct. Ap. 1987). All of the elements must exist to establish a claim based upon fraud yet Bowman failed to establish two of them.

Bowman's assertion that Smith Motors acted fraudulently is devoid of any evidence that Smith Motors intentionally tried to deceive or mislead Bowman. Bowman's own account of the

signing of the contracts establishes little more than a failure to communicate effectively or specifically. Bowman testified:

> The day that we signed the loan document, he [Tim Tisdale] went in to Lee's office to find out, to make sure that they had the insurance. He came back and he said both of them said – he didn't say both of them. He said the insurance is taken care of. He said you've got it. And that was all that was ever said that day about it.

The other element Bowman failed to establish is that he "reasonably relied" upon representations by Smith Motors. All he established was that he relied on Tisdale's representations, however, that is not sufficient. It was his burden to establish that his reliance was reasonable, yet he failed to do so. The burden is on the plaintiff to show that his or her reliance on the defendant's representation was reasonable. *Metro. Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn.Ct. App.1992). Generally, a party having the ability and opportunity to inform himself of the contents of a writing before he executes the writing is not justified in relying upon representations where the means of knowledge are readily available to that party. 37 C.J.S. *Fraud* § 34; *Evans v. Tillett Bros. Const. Co. Inc.,* 545 S.W.2d 8, 11 (Tenn. 1976). Bowman acknowledged he was given the opportunity to read the contract documents for both vehicles, yet he decided not to and signed them without knowing their contents.[4] Moreover, he admits he didn't read them the next day, the next week or month. Indeed, he admits he did not read them until the day of his deposition, even though the contracts were in his possession since the date of signing.

Significantly, had Bowman read the contract documents, he would have noted they clearly indicate he was purchasing life insurance but not disability insurance as a checkmark appeared in the box next to life insurance, with the cost of the insurance indicated, whereas there was no checkmark in the box next to disability insurance and "N/A" was written in the area where the cost of the disability insurance would appear.

Although Bowman provided sufficient evidence to establish a misunderstanding, there is no evidence that Smith Motors intentionally misrepresented the disability insurance and that his reliance

---

[4]Bowman also testified that he was not prevented by any Smith Motors employee from reading the contracts at the time of the signing, he merely chose not to read them.

was reasonable. Based upon these findings, whether Bowman sustained damages is moot.[5] We therefore affirm the trial court's decision to dismiss Bowman's claims by directing a verdict.

## VOLUNTARY DISMISSAL

After Smith Motors made its motion for a directed verdict, the trial court began to rule from the bench, explaining its assessment of the evidence and the law. The trial court had just explained and pronounced its ruling, granting a directed verdict on the issues of common law and statutory law when Bowman's attorney interrupted the judge to express his disagreement with its analysis.

In the course of the discussion between Bowman's attorney and the judge Bowman claims he expressed his intention to take a voluntary non-suit. Although it is undisputed the trial judge had ruled as to all claims with the possible exception of negligent misrepresentation, it is disputed whether Bowman took a voluntary dismissal or merely announced an intent to do so if the trial court was inclined to rule against him.

Rule 41.01 of the Tennessee Rules of Civil Procedure affords the plaintiff the opportunity to take a voluntary nonsuit in a jury trial at any time before the jury retires to consider its verdict and prior to the ruling of the court sustaining a motion for directed verdict. The rule authorizes the plaintiff to take a voluntary dismissal during a trial by either "filing a written notice of dismissal or by an oral notice of dismissal made in open court during the trial." Tenn. R. Civ. P. 41.01(1). Although Bowman contends he took a voluntary dismissal, we find he merely expressed an equivocal intention to do so if the trial court planned to rule adverse to him. The transcript containing the relevant dialogue between counsel and the trial judge reads as follows:

> Now, if Your Honor is inclined to grant his motion for directed verdict and based upon what I'm understanding Your Honor to say, I would respectfully request of the Court to allow me to do a Rule 41 voluntarily nonsuit at this time to amend these pleadings, to go back and to file this suit because it will kill my client's claim and I don't want that to happen because under the current state of the law, I am absolutely convinced that he has a viable claim for negligent misrepresentation.

---

[5]The trial court also found that even had Bowman prevailed in presenting evidence of fraud, his claim would not have succeeded because he failed to prove damages. In a claim based on fraud the plaintiff must show he suffered damage as a result of the misrepresentation. *Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001); *McKinney*, 852 S.W. at 237. Thus, Bowman had to show he would have recovered on the policy. The insurance application required that Bowman disclose his medical history. The only condition he disclosed was cancer, however, Bowman was suffering from multiple medical ailments he did not disclose. The application specifically asked whether he had a history of heart disease or high blood pressure. At the time Bowman filled out the application, he was being treated for hypertensive heart disease, chronic obstructive pulmonary disease, cardiomyopathy and high blood pressure. He did not disclose any of that. An insurer may defeat a claim if a misrepresentation on the application increases the risk of loss for the insurer. Tenn. Code Ann. § 56-7-103. The omissions on Bowman's application for insurance would increase the insurers risk of loss, thus even had Smith Motors submitted the application for both life term and disability insurance, Bowman provided no proof that he would have prevailed on a claim on the disability policy.

Following this mention of a voluntary nonsuit, the court continued to discuss the motion for directed verdict fully airing all issues. Bowman's counsel did not interrupt the trial court thereafter, did not mention a voluntary dismissal again, and most significantly did not give notice of dismissal in open court as Tenn. R. Civ. P. 41.01(1) permits. Rather, Bowman's counsel engaged in a lengthy discussion with the court regarding the merits of the motion for directed verdict. Even when the trial judge said, "Well, let me rule on your issue of negligent misrepresentation," Bowman's counsel didn't attempt to stop the judge or assert a voluntary dismissal. Whereas Bowman characterizes his statement during the exchange with the trial judge as a motion, we find that in reality he was attempting to bargain with the court, urging the court to inform him of its intentions prior to officially ruling on the motion for directed verdict, so that if it was unfavorable he could take a voluntary dismissal. The trial court didn't take the bait and Bowman did not expressly or unequivocally take a voluntary dismissal as the rule permits. Thus, we find that Bowman did not successfully assert a voluntary dismissal.

## CONCLUSION

The judgment of the trial court is affirmed in granting directed verdict for the defendant on all claims and this matter is remanded with costs of appeal assessed against appellant, Alton Bowman.

_____
FRANK G. CLEMENT, JR., JUDGE