# HERMITAGE HEALTH AND LIFE INSURANCE CO., Plaintiff in Error, v. EDWARD R. BUCHIGNANI, Defendant in Error.—354 S. W. (2d) 94.

Western Section.   August 31, 1961.

Petition for Certiorari Denied by Supreme Court, February 8, 1962.

Caruthers Ewing, Memphis, for plaintiff in error.

Ronald Harkavy, Memphis, for defendant in error.

BEJACH, J.   This cause involves an appeal by the Hermitage Health & Life Insurance Company from a judgment against it in the sum of $449.60 in favor of E. R. Buchignani, entered October 31, 1960 in the Circuit Court of Shelby County, Tennessee.   Suit was originally filed in the Court of General Sessions, and, from it appealed to the Circuit Court.   For convenience, the parties will be styled as in the lower court, plaintiff and defendant, or called by their respective names.   The suit is on two policies of insurance issued by the defendant May 16, 1958, both of which contain the same clause which is material to disposition of this case.   The material clause defines liability of defendant for benefits accruing under said policies, as follows:

"(b) resulting from sickness the cause of which originates while this policy is in force and more than 15 days after the date hereof, hereinafter referred to as such sickness."

The judgment in the sum of $449.69 was for the amount stipulated by the parties, if defendant is liable. Plaintiff, at the time of the trial, was 81 years of age, having applied for the insurance when he was 79.   Both policies are limited policies.   They cover hospital and medical benefits.   One of them covers hospital and surgical expenses and the other hospital room expenses.

In answer to question 11 of his application for the policies, as to any disability, surgical treatment, consultations, or checkups received during the past five years, the application shows that plaintiff had consulted only

Dr. Sam Blackwell regarding blood pressure, and stated that he was "O.K." at the time of the application. Before issuing the policy, defendant wrote to Dr. Blackwell and received from him a statement, on the basis of which the policies were issued. The policies excepted diseases involving the heart, circulatory system, gout, arthritis and rheumatism in any form. These exceptions resulted from the statement of Dr. Blackwell in reply to the inquiry made of him by defendant.

The claim in the instant case arises out of the fact that on September 9, 1959, Dr. Raymond F. Mayer performed a transurethral resection of the plaintiff's prostate. On a claim blank dated September 22, 1959, Dr. Mayer, in reply to a question, "Do records indicate patient has had previous history of symptoms?", Dr. Mayer answered, "Yes"; and then in response to the question, "When was health first affected?", answered "Approximately ten years." A separate claim blank was also filled out by Dr. Mayer under the same date, although his testimony shows that it was actually filled out the later part of November 1959. In this one he answered "Unknown" to the question, "Do records indicate the patient has had previous history of symptoms?" Dr. Mayer's explanation was that "The approximately ten years ago" on the first of these claim blanks was "This having been a part of the history which Mr. Buchignani gave us."

Dr. Walter Hoffman, a witness for plaintiff, testified that prior to May 16, 1958, on, to wit, December 7, 1956, December 28, 1956, January 19, 1957, and May 28, 1957, Mr. Buchignani had consulted him, and had told him that within five years preceding the application, on May

16, 1958, he had seen Dr. Sanders, Dr. Blackwell, and plaintiff's nephew, Dr. Joseph Buchignani, now deceased. Dr. Hoffman testified that when he examined plaintiff in December 1956, he found an enlarged prostate gland, and that on taking the history from plaintiff in 1956, plaintiff told him that he had had some difficulty in initiating the flow of urine, which Dr. Hoffman states is a "typical symptom from the enlargement or thickening of the prostate", which was found to exist on December 7, 1956. Dr. Blackwell testified that on April 6, 1956, he examined plaintiff's prostate, did not find it enlarged, but stated, "I told him the only thing he had was pyuria", and, "I told him his prostate was probably the source of that."

Plaintiff testified that when his application was filled out, he told the defendant's agent, W. M. Jackson, that he had consulted Doctors Sanders and Hoffman, in addition to Dr. Blackwell, and also his nephew Dr. Joseph Buchignani, but that Mr. Jackson did not write this into the application. Mr. Jackson, now a general agent for another insurance company, testified on behalf of defendant and stated that he put into the application all information given to him by Mr. Buchignani.

In deciding the case, Judge Hastings observed that it is almost common knowledge that the vast majority of elderly men have some trouble with their prostate glands, and that the insurance company unquestionably knew this when it issued it policies to plaintiff; that the plaintiff may have had some prostate trouble before the policies were issued, but if he did there was no obstruction, and that the doctors did not think the condition of plaintiff's gland before the issuance of the policies, was

of any significance. He also observed that, in view of the construction of the policy and the view he took of the case, it was not material whether or not Mr. Buchignani had told the agent of all the doctors who had treated him, or with whom he had consulted within five years prior to the issuance of the policy. He also said that "sickness" as used in this policy means sickness in the hospital by reason of which the hospital expenses and surgical fees were incurred that "the 'cause' which originates when this policy is in force" means the immediate cause of such sickness and hospital confinement.

As appellant, the defendant has filed in this Court five assignments of error. It will not be necessary to copy these into this opinion, nor to discuss them separately. They present adequately all questions of fact and law material for disposition of this case.

■■ We think the burden of proof was on the plaintiff to establish that he told defendant's agent of other doctors beside Dr. Blackwell with whom he had consulted within five years. In view of the fact that W. M. Jackson, the agent in question, contradicts plaintiff's statement to that effect, and especially, in view of the fact that the trial judge did not pass on this question, we think that issue was not established by the proof, and must be found in favor of defendant. In any event, as was said by the Supreme Court in DeFord v. National Life & Accident Ins. Co., 182 Tenn. 255, 265, 185 S. W. (2d) 617, 621:

"(8) It is the general rule that one who enters into a written contract, negotiated by an agent, is presumed to know the contents of the writing and is bound thereby—although peculiar and exceptional

circumstances may affect the application of this general rule.''

Also, in Beasley v. Metropolitan Life Insurance Co., 190 Tenn. 227, 229 S. W. (2d) 146, 148, the Supreme Court quoted with approval from authorities there cited, as follows:

 '' 'To permit a party, when sued on a written contract, to admit that he signed it, but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.' 12 Am. Jur., 629. 'In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.' 17 C.J.S. Contracts sec. 137, pages 489, 490.''

In Dees v. National Casualty Co., 17 Tenn. App. 183, 66 S. W. (2d) 603, this Court, in an opinion written by its former presiding judge, Anderson, held that a provision in a health and accident policy insuring only against illness beginning after effective date of the policy, was valid. And, in Smithpeters v. Prudential Insurance Co. of America, 18 Tenn. App. 628, 630, 81 S. W. (2d) 392, 394, the Court of Appeals, Eastern Section, in an opinion written by its present presiding judge, McAmis, said:

"Obviously, if plaintiff in error became totally and permanently disabled before the policy was issued, he could not recover because he is indemnified only against total and permanent disability occurring while the policy is in effect. The certificate so provides, and this is a reasonable and binding provision of the contract. Dees v. National Casualty Co., 17 Tenn. App. 183, 66 S. W. (2d) 603; Williams v. [Interstate Life & Accident] Insurance Co., 163 Tenn. 262, 43 S. W. (2d) 215."

The principle that the language of an insurance policy must be liberally construed in favor of the insured is not applicable in the instant case because there is no ambiguity in the policies here involved. In Wallace v. State Farm Mut. Auto Ins. Co., 187 Tenn. 692, 701, 216 S. W. (2d) 697, 701, the Supreme Court said:

"There is no ambiguity in the language used in the policy before us. Where the insurance contract is not ambiguous, it is our duty to apply to the words used their ordinary meaning and neither party is to be favored in their construction, Seay v. Georgia Life Ins. Co., 132 Tenn. 673, 179 S. W. 312, Ann. Cas. 1916E, 1157. The well recognized rule of construing language of an insurance policy most strongly against the insurance company (the one who writes the policy), Pacific Mut. Life Ins. Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 112 Am. St. Rep. 862, does not permit us or cause us to create an ambiguity where none exists."

Also, in the case of Brown v. Tenn. Auto Ins. Co., 192 Tenn. 60, 63, 237 S. W. (2d) 553, 554, the Supreme Court said:

"The policy in question is of standard form and there is no ambiguity whatever in the endorsement or rider. Where there is no ambiguity, it is the duty of the Court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. The well recognized rule of construing language of an insurance policy most strongly against the insurance company does not permit or cause the Court to create an ambiguity where none exists. Wallace v. State Farm Mutual Auto. Ins. Co., 187 Tenn. 692, 701, 216 S. W. (2d) 697.

"It seems clear to us that this insurance was limited to collisions occurring within a fifty mile radius of Franklin, and the collision in question, having occurred beyond the contractual limit, is not covered under the policy."

Counsel for plaintiff cites the case of Life & Cas. Ins. Co. v. King, 137 Tenn. 685, 195 S. W. 585, and quotes from that case the following language:

"In the absence of fraud, the insured has a right to assume that the agent will impart to his principal information which if insisted upon would invalidate the contract from its inception. Such knowledge constitutes a waiver of condition inconsistent with such facts and the insuror is estopped thereafter from asserting the breach of such conditions."

The above quotation is obviously good law when applied to appropriate facts. It should be noted, however, that in Life and Casualty Insurance Co. v. King, the Supreme Court reversed both the Circuit Court and

the Court of Appeals, and dismissed plaintiff's suit. In another part of its opinion, written by Mr. Chief Justice Neil, the Supreme Court said:

"We see no objection to the sixth provision. This is in the nature of a condition subsequent, and provides for the forfeiture of the insurance in case the insured shall die of any disease contracted, or injury received, before the delivery of the policy. Certainly this is a reasonable provision, and, if the parties to the contract were willing to make this term a part of it, there could be no objection to it in law or morals." Life & Cas. Ins. Co. v. King, 137 Tenn. 699-700, 195 S. W. 588.

The facts involved in the instant case are stronger than those in the case of Life & Casualty Ins. Co. v. King. In the case at bar, it is a condition precedent limiting plaintiff's right of recovery to sickness, "the cause of which originates while this policy is in force, and more than fifteen days after the date hereof"; whereas in Life & Casualty Ins. Co. v. King, the provision which protected the insurance company was held to be a condition subsequent.

In our opinion, the defendant is entitled to have its assignments of errors sustained in the instant case. The judgment of the lower court will be reversed, and plaintiff's suit dismissed at his cost.

Avery, P. J. (W. S.), and Carney, J., concur.