# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

December 15, 1998

Cecil W. Crowson

Appellate Court Clerk

BRAXTON D. DIXON,            )
                            )
    Plaintiff/Appellee,      )        Sumner Circuit No. 16102-C
                            )
v.                          )
                            )
STEVE BRYAN,                )        Appeal No. 01A01-9707-CV-00371
                            )
    Defendant/Appellant.     )

APPEAL FROM THE CIRCUIT COURT OF SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS GOODALL, JUDGE

For the Plaintiff/Appellee:              For the Defendant/Appellant:

C. Tracey Parks                          William Kennerly Burger
Gallatin, Tennessee                      Murfreesboro, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

## OPINION

This is an action brought under the Tennessee Consumer Protection Act. The suit arose out of a contract to sell an antebellum log home to be dismantled and moved. The trial court found that the defendant knowingly engaged in a deceptive trade practice, and awarded the plaintiff treble damages and attorney's fees. We affirm.

In June 1995, Defendant/Appellant Steve Bryan ("Bryan") placed an advertisement in a publication, the *Traders Post*, reading in pertinent part: "2 story Cedar Dog Trot Log House - To be moved - $5000 . . ." The home, built in approximately 1820, was located in Bedford County. Plaintiff/Appellee Braxton Dixon ("Dixon") responded to the advertisement. Dixon is a builder and a designer who specializes in the restoration, preservation, and relocation of antebellum structures. Dixon and Bryan discussed the sale of the log home. Dixon alleges that Bryan told him that he owned the log home and "signed a statement to that effect."

The parties orally agreed that Dixon would purchase the home for $4000. Dixon tendered $2000 in cash to Bryan and agreed to pay the remainder after the house was dismantled. To document the transaction, Dixon signed a sales agreement entitled "Agreement and Bill of Sale," ("Agreement"). The Agreement listed Mrs. W. D. Haynes ("Haynes") as the "seller." Haynes had not signed the Agreement.

Dixon arranged to resell the log home to a purchaser in Texas and made preparations for the home's dismantling and shipment. At the site of the log home, before the dismantling was completed, Dixon was confronted by a local realtor. The realtor told Dixon that Haynes owned the home and that the realtor had listed the property for sale. Dixon immediately stopped his preparations for dismantling and transporting the log home.

Dixon later learned that Bryan had been trying for some time to purchase the home from Haynes. Bryan's draft purchase contracts, submitted to Haynes, had been rejected. After Bryan obtained the $2,000 deposit from Dixon, he had a $1,000 cashier's check drawn to Haynes and sought to meet with her to obtain permission to sell the log home and consummate the transaction. Bryan was unable to meet with Haynes.

In addition to the $2,000 paid to Bryan, Dixon incurred expenses originally estimated at $863. Bryan agreed to return the $2,000 to Dixon and pay him $863 in expenses incurred. Bryan

repaid the $2,000 deposit to Dixon but did not pay the expenses. Dixon later determined that his expenses totaled $1,038,66.

Dixon filed this action in Sumner County General Sessions court to recover his damages from Bryan's alleged breach of contract and misrepresentation. Dixon also sought treble damages and attorney's fees under the Tennessee Consumer Protection Act ("Consumer Protection Act") *See* Tennessee Code Annotated §§ 47-18-101 et seq. (1995 & Supp. 1997). Default judgment was entered in General Sessions court, and the case was appealed to Circuit Court.

Following a bench trial, the trial court found that Dixon suffered damages totaling $1,038.77. The trial court also found that Bryan "knowingly engaged in a deceptive trade practice." Consequently, the trial court awarded Dixon treble damages and attorney's fees under the Consumer Protection Act. The trial court, however, found that Dixon was negligent in not carefully reading the Agreement, and reduced Dixon's damages by ten percent. Thus, Bryan was awarded a total of $2,804.68, plus $775 in attorney's fees. From this order, Bryan appeals.

On appeal, Bryan contends that treble damages under the Consumer Protection Act were inappropriate. Bryan asserts that since the record contains no proof of any actual intent to deceive or mislead, and that the trial court erred by awarding treble damages.

Our review of the findings of fact by the trial court is *de novo* upon the record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. Civ. P. 13(d). Questions of law are *de novo* with no presumption of correctness. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995).

The Consumer Protection Act, enacted in 1977, is "to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices." ***Morris v. Mack's Used Cars***, 824 S.W.2d 538, 540 (Tenn. 1992) (citing ***Haverlah v. Memphis Aviation, Inc.***, 674 S.W.2d 297, 305 (Tenn. App. 1985). Persons harmed as a result of "an unfair or deceptive act or practice declared to be unlawful" by the Act may recover actual damages. Tenn. Code Ann. § 47-18-109(a)(1) (1995). The trial court may also award attorney's fees. *Id.* § 47-18-109(e)(1). If the trial court finds that the defendant "willful[ly] or knowing[ly]" violated the Act, the plaintiff may be awarded treble damages. *Id.* § 47-18-109(a)(3). Factors to be considered in determining whether

2

to award treble damages include:

> (A) The competence of the consumer or other person;
> (B) The nature of the deception or coercion practiced upon the consumer or other person;
> (C) The damage to the consumer or other person; and
> (D) The good faith of the person found to have violated the provisions of this part.

*Id.* § 47-18-109(a)(4).

Bryan does not argue that the trial court erred in awarding Dixon actual damages under the Consumer Protection Act.[1] Bryan contends that the record does not indicate that he "willful[ly] and knowing[ly]" violated the Act, and that therefore the trial court erred in awarding treble damages. *Id.* § 47-18-109(a)(3). The linchpin of Bryan's argument is that Dixon signed the Agreement, which listed Haynes, rather than Bryan, as the seller. At trial, Dixon testified that he did not read the Agreement before signing it. However, Bryan notes that Dixon corrected the spelling of his name in the document. In addition, Bryan argues that Mary Ann McConnell ("McConnell"), a consultant of Dixon, testified at trial that she "questioned" the document. Bryan asserts that Dixon's signing of the Agreement imputes him with notice that Haynes, not Bryan, was the seller.

Bryan notes case law holding that, in the absence of fraud, a person who:

> fails to read the contract or otherwise to learn its contents, . . . signs the same at his peril and is estopped to deny his obligation, [and thus] will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.

*Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. App. 1993) (quoting *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 232, 229 S.W.2d 146, 148 (1950)). Bryan also cites the axiom that "no man can recover upon the theory of fraud or mistake with respect to any matter of fact about which he has actual knowledge or legally imputed knowledge." *Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn. App. 1993). Bryan reasons that since Dixon had legal notice of the fact

---

[1] In *Ganzevoort v. Russell*, 949 S.W.2d 293, 297-98 (Tenn. 1997), the Tennessee Supreme Court held that the Consumer Protection Act does not apply to the purchase of real estate from a seller who is not "in the business of selling property as owners or brokers." This issue was not raised to the trial court and the record does not indicate whether Bryan was in the business of selling log homes or whether the log home would be considered realty. Consequently, we will not address the applicability of the Consumer Protection Act in this appeal. *Cf. Murvin v. Cofer*, No. 03A01-9702-CH-00055, 1997 WL 752648, at *5 (Tenn. App. Dec. 8, 1997) (in a case that was tried before the *Ganzevoort* decision, the defendants, who did not raise the issue of the Act's inapplicability at trial, did not waive raising the issue on appeal, since the defendants' Answer "had the effect of denying each and every element of the plaintiffs' alleged cause of action").

that Haynes was the real owner, by virtue of the Agreement, Bryan could not have been deceptive and, thus, was not liable under the Act.

However, in the cases cited by Bryan, the issue was whether the contract should be enforced, as "where one who has negligently signed a contact without reading it, seeks to avoid his obligation...." *Giles*, 871 S.W2d at 157; *see, e.g., Beasley*, *supra*; *Cravens v. Cravens*, 54 Tenn. App. 487, 392 S.W.2d 825 (1965); *Hermitage Health & Ins. Co. v. Buchignani*, 49 Tenn. App. 223, 354 S.W.2d 94 (1961). Here, there is no issue regarding whether the contract should be enforced. Rather, the issue is whether Bryan should be immunized from liability under the Consumer Protection Act, regardless of any deceptive or fraudulent actions that he may have perpetrated. In this case, there was evidence from which the trial court could conclude that Bryan affirmatively misrepresented that the owned he log home and that, consequently, he had the authority to sell it. The terms of the Consumer Protection Act are quite broad and are to be liberally construed to protect the consumer. *See* Tenn. Code Ann. § 47-18-104 (1995); *Morris*, 824 S.W.2d at 540. Under these circumstances, the fact that Haynes was listed in the Agreement as the owner of the log home does not immunize Bryan from liability for Dixon's damages.

No issue on appeal has been raised regarding the trial court's reduction of damages awarded to Dixon based on Dixon's negligence in failing to read the Agreement.

In this case, there is ample evidence from which the trial court could conclude that Bryan willfully and knowingly engaged in deceptive practices. The trial court was in the best position to consider the credibility of witnesses and, thus, its findings are entitled to "considerable deference." *Tenn-Tex Properties v. Brownell-Electro, Inc.,* 778 S.W.2d 423, 425-26 (Tenn. 1989). The preponderance of the evidence supports the trial court's finding that Bryan "knowingly engaged in a deceptive trade practice." Consequently, the awarding of treble damages and attorney's fees[2] was appropriate in accordance with the Consumer Protection Act. Tenn. Code Ann. § 47-18-109(a)(3) & (e)(1) (1995).

---

[2] Bryan's brief appears to suggest that attorney's fees are not appropriate unless the evidence demonstrates a "willfull or knowing violation." Tennessee Code Annotated § 47-18-109(e)(1) does not require a showing that the defendant's actions were a "willful or knowing violation" in order for attorney's fees to be awarded. *Cf.* Tenn. Code Ann. § 47-18-109(a)(3) (1995). It simply requires a showing that a provision of the Consumer Protection Act has been violated. *Id.* § 47-18-109(e)(1).

The decision of the trial court is affirmed.  Costs on appeal are taxed to the Appellant, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**