IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
February 24, 2015 Session

MICHAEL ADLER v. DOUBLE EAGLE PROPERTIES HOLDINGS, LLC,
ET AL.

Appeal from the Chancery Court for Shelby County
No. CH0809082     Arnold B. Goldin, Chancellor

---

No. W2014-01080-COA-R3-CV – Filed April 2, 2015

---

This case concerns the proper interpretation of a contract governing an interest in real property. The trial court concluded that the contract unambiguously granted a lease to one party, rather than an easement. Affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Roger A. Stone and Lisa N. Stanley, Memphis, Tennessee, for the appellant, Airways Commons, LLC.

Jeremy G. Alpert, Memphis, Tennessee, for the appellee, Double Eagle Properties Holdings, LLC.

## OPINION

### Background

This is the second appeal in this case involving the interpretation of a commercial

transaction involving an interest in real estate. Accordingly, we take many of the facts from our prior Opinion, *Adler v. Double Eagle Properties Holdings, LLC*, No. W2010-01412-COA-R3-CV, 2011 WL 862948 (Tenn. Ct. App. March 14, 2011) ("*Adler I*"). In *Adler I*, we stated:

> Airways Commons, LLC ("Airways" or "Seller") owned a commercial office building located at 3385 Airways Boulevard, Memphis, Tennessee. Fixed atop the building is a cellular tower [owned by BellSouth Mobility LLC d/b/a Cingular Wireless ("Cingular Wireless"). On November 30, 2005, Airways entered into an agreement styled "Rooftop Lease and Assignment Agreement" ("Rooftop Agreement") with Unison Site Management, LLC ("Unison"). . . .

*Adler I*, 2011 WL 862948, at *1. The Rooftop Agreement was executed by Manouchehr Malekan, the President and sole member of Airways.

As we explained in *Adler I*: "The Rooftop Agreement purported to lease to Unison the rooftop portion of the building for the use and maintenance of the cellular tower. In exchange, Unison paid Airways $135,000 as complete consideration upon the signing of the Rooftop Agreement." *Id.* The Rooftop Agreement referred to the transaction as a lease and provided that the term of the lease was for thirty years. The consideration for the lease, however, was characterized as a "purchase price[.]" In addition, the Rooftop Agreement contained an exhibit providing that Airways "assign[ed] and [transfer[ed] to Unison . . . all of its right, title and interest in, to and under any lease agreements. . . ." The Cingular Wireless lease was specifically cited as being included in the assignment.

> Contemporaneously with the signing of the Rooftop Agreement, Unison assigned its interest in the agreement to its wholly-owned subsidiary, Cell Tower Lease Acquisition, LLC ("Cell Tower"). This assignment was styled "Assignment of Easement" and was recorded with the Shelby County Register of Deeds. . . .

*Id.*

Airways and Unison operated under the Rooftop Agreement for several years without dispute. However,

2

> [o]n April 8, 2008, Double Eagle Properties Holdings, LLC ("Double Eagle" or "Buyer") entered into an agreement with Airways for the purchase and sale of the entire building. This agreement was styled "Commercial Purchase and Sale Agreement" ("Purchase Contract"). The Purchase Contract contained an assignment of leases provision under which Airways assigned and conveyed its interest as landlord in all leases on the building to Double Eagle.

*Id.* The Purchase Contract further provided that for any assignments of leases required under the contract, any rents due would be prorated between Airways and Double Eagle based on their remaining term at the time of closing on the Purchase Contract. To effect this obligation:

> Airways was required to submit to Double Eagle a complete and accurate rent roll describing the terms of all leases on the building. As a "Special Stipulation," Paragraph 17 of the Purchase Contract stated that "[p]urchaser understands that Cingular Wireless has a perpetual easement on the property relating to cell towers on the roof. No rent is provided to the owner. Cingular Wireless pays [its] own utilities of $500–$750.00/month."

*Id.* The Purchase Contract also contained the following provision:

> In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

Subsequent to the execution of the Purchase Contract, Double Eagle performed a title search on the property, which revealed the Rooftop Agreement. A dispute soon arose as to whether payments under the Rooftop Agreement were rents subject to proration between Airways and Double Eagle:

> After execution of the Purchase Contract, but before closing on the purchase and sale of the building, Double Eagle raised an issue with Airways as to whether the Rooftop

> Agreement between Airways and Unison was, in fact, a lease subject to the assignment of leases provision in the Purchase Contract. Double Eagle asserted that the Rooftop Agreement was, in fact, a lease and that the $135,000 Unison paid to Airways was prepaid rent that should be prorated under the Purchase Contract and paid to Double Eagle. Airways contended that the Rooftop Agreement was, in fact, an easement and not subject to the assignment of leases, and that the $135,000 was the purchase price paid by Unison for the easement.

*Id.*

The parties were unable to resolve the dispute prior to the closing of the property. As such,

> [a]s a condition to closing, which occurred on April 18, 2008, the parties agreed to escrow the disputed funds "until such time as a court of competent jurisdiction shall determine what amount, if any, received by Seller from Unison should be paid to Buyer pursuant to the terms of the [Purchase] Contract." On May 15, 2008, the escrow agent, attorney Michael Adler, filed a petition to interplead $135,000 in escrowed funds in the Chancery Court for Shelby County, naming as defendants, Double Eagle and Airways. Double Eagle and Airways both filed answers and cross-claims against each other. Both cross-claims sought a declaratory judgment as to the proper allocation and distribution of the $135,000 received by Airways from Unison. Double Eagle sought a construction of both the Purchase Contract and the Rooftop Agreement, while Airways maintained that the dispute should be resolved by exclusive reference to the Purchase Contract.

*Id.* at *2 (footnote omitted). Unison, however, was never made a party to the lawsuit. Airways and Double Eagle later agreed to allow the escrow agent to deduct his attorney's fees and expenses, leaving a total of $132,425.00 in escrow.

Thereafter,
> [o]n July 24, 2009, Double Eagle, as cross-complainant, filed a motion for summary judgment, memorandum of law, and statement of undisputed facts. On August 3, 2009, Airways

4

likewise filed a motion for summary judgment, memorandum of law, and statement of undisputed facts. Both parties subsequently filed responses to these motions for summary judgment and statements of undisputed facts. Throughout these filings, much litigation focused on whether the Rooftop Agreement was a lease or an easement, as the parties apparently agreed that a determination of this issue would be dispositive of the declaratory judgment action.

The trial court held a summary judgment hearing on November 20, 2009. By order of March 3, 2010, the trial court granted summary judgment in favor of Double Eagle in the amount of $124,312.50 plus attorney's fees and expenses. In doing so, the trial court construed both the Purchase Contract and the Rooftop Agreement. The trial court determined, *inter alia*, that: (1) Paragraph 17 of the Purchase Contract was an incorrect statement upon which Double Eagle should have been able to rely; (2) the Rooftop Agreement was, in fact, a lease and not an easement; and (3) because the Rooftop Agreement was a lease and the Purchase Contract provided for the proration of rents, the $135,000 in dispute must be prorated as rent and paid to Double Eagle.

*Id.*

Airways appealed to this Court, arguing that the trial court erred in interpreting the Rooftop Rental as a lease rather than an easement. Upon review of the record, however, this Court determined that Unison was a necessary party to the action and remanded to add Unison as a party. *Id.* at *7.

After remand, Unison and its subsidiaries were added as parties to the case and additional discovery was conducted with Unison. Double Eagle filed a second motion for summary judgment on June 4, 2014. Airways responded in opposition, relying on documents discovered during discovery with Unison that Airways contended showed that both Airways and Unison intended to enter into an agreement to convey an easement. Further, Airways argued that Double Eagle should not recover because it failed to exercise good faith in researching the title of the property prior to entering into the Purchase Contract. Unison, however, took no position as to the appropriate interpretation of the Rooftop Agreement. The trial court entered an order reaffirming its prior ruling regarding the proper interpretation of the Rooftop Agreement on October 28, 2013. Specifically, the trial court concluded that: (1)

the contract unambiguously contemplated a lease between Unison and Airways; and (2) Double Eagle had no duty to research the title of the property prior to executing the Purchase Contract; and (3) Double Eagle is entitled to a proration of the rent due under the Rooftop Agreement. Accordingly, the trial court awarded a judgment to Double Eagle in the amount of $124,312.50, plus pre- and post-judgment interest. The trial court again awarded Double Eagle its prior award of attorney's fees, and directed that it would consider additional attorney's fees at a later proceeding. Thereafter, the trial court entered a final written order awarding Double Eagle $124,312.50, plus pre- and post-judgment interest, $30,000.00 in attorney's fees and $4,442.65 in expenses from the prior proceeding, and $30,054.70 in attorney's fees and $1,259.81 in expenses in connection with the proceedings that took place after remand from this Court.

## Issues Presented

Airways appeals the trial court's ruling, raising four issues, which are taken, and slightly restated, from Airways' brief:[1]

---

[1] The record in this case consists of over twenty volumes. The technical record alone contains nearly 1200 pages. Rule 24 of the Tennessee Rules of Appellate Procedure governs the preparation of the appellate record, and provides, in pertinent part:

> The following papers filed in the trial court are **excluded from the record**: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) **all papers relating to discovery**, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto; (3) any list from which jurors are selected; (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. **No paper need be included in the record more than once.**

Tenn. R. App. P. 24(a) (emphasis added). Despite this admonition, the record on appeal contains several discovery documents that are specifically excluded by Rule 24. Moreover, the record contains no less than eight copies of the Rooftop Agreement, five copies of the Purchase Contract, and multiple copies of nearly every other document pertinent to this appeal. While it is generally the duty of the appellant to prepare the appellate record, we note that appellee Double Eagle filed a motion in the trial court to include many documents in the record, which documents certainly added to the voluminous record in this case. Had the parties adhered to the rule regarding the exclusion of discovery and duplicate filings, our record would have been more streamlined and the interest of judicial economy would have been better served. We caution litigants that "while in this case we chose to proceed with our review despite the fact that the parties chose not

(Continued…)

(1) Whether the trial court erred in refusing to look at parol evidence despite contradictions and ambiguities in the Rooftop Agreement, ignoring the parol evidence reflecting the negotiation between Airways and Unison was for the purchase of an easement and not a lease.

(2) Whether the trial court erred in holding that the Rooftop Agreement was a lease and not an easement despite language providing that the agreement may not be terminated by the site owner, language characterizing the consideration as the purchase price, and despite the fact that the assignment of the Rooftop Agreement is labeled "Assignment of Easement."

(3)Whether the trial court erred in holding that despite viewing the cellular tower on the roof of the property prior to entering into the purchase contract, Double Eagle had no duty to exercise due diligence in researching the terms by which it would be bound under the agreement with the third party cellular tower owner.

(4) Whether the trial court erred in awarding attorney's fees to Double Eagle as the prevailing party should the judgment be overturned.

In the posture of Appellee, Double Eagle raises the additional issue:

(1) Whether Double Eagle should be awarded its attorney's fees and costs on appeal pursuant to paragraph 15(I) of the Commercial Purchase and Sale Agreement dated on or about April 8, 2008.

### **Standard of Review**

The trial court decided this case on a motion for summary judgment. A trial court's

---

(…continued)
to abide by the rules of this Court, we cannot say we will be so accommodating and choose to do the same in the future." **Wells v. Wells**, No. W2009-01600-COA-R3-CV, 2010 WL 891885, *4 (Tenn. Ct. App. March 15, 2010).

7

decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. ***Abshure v. Methodist Healthcare-Memphis Hosps.***, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. "Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment." ***Ross Prods. Div. Abbott Labs. v. State***, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2–3 (Tenn. Ct. App. Dec.5, 2007) (citing ***Doe v. HCA Health Servs. of Tenn.***, 46 S.W.3d 191, 196 (Tenn. 2001); ***Guiliano v. Cleo***, 995 S.W.2d 88, 95 (Tenn. 1999); ***Hamblen County v. City of Morristown***, 656 S.W.2d 331, 335–36 (Tenn. 1983)).

"'The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles.'" ***Maggart v. Almany Realtors, Inc.***, 259 S.W.3d 700, 703–704 (Tenn. 2008) (quoting ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578, 580 (Tenn. 1975)). "[O]ur task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." ***Guiliano***, 995 S.W.2d at 95 (citing ***Hamblen County***, 656 S.W.2d at 333–34; ***Bob Pearsall Motors, Inc.***, 521 S.W.2d at 580). The entire contract should be considered in determining the meaning of any or all of its parts. ***Maggart***, 259 S.W.3d at 704 (quoting ***Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.***, 690 S.W.2d 231, 237 (Tenn. 1985)). "The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." ***Maggart***, 259 S.W.3d at 704 (citing ***Davidson v. Davidson***, 916 S.W.2d 918 922–23 (Tenn. Ct. App. 1995)). "All of the contract provisions should be construed in harmony with each other, if possible, to promote consistency and avoid repugnancy between the various provisions of a single contract." ***Maggart***, 259 S.W.3d at 704 (citing ***Guiliano***, 995 S.W.2d at 95).

## Analysis

As an initial matter, we must first discuss the deficiencies in Airways' appellate brief, as it has a significant effect on the issues decided herein. First, we note that other than some references to deposition testimony, the argument section of Airways' appellate brief contains no references to the record on appeal. Specifically, the argument section of Airways' brief

omits appropriate references to many of the documents Airways uses to support its assertions on appeal. In addition, with regard to many of the legal contentions advanced by Airways, its brief contains no citation to relevant legal authority to support these contentions, as discussed in detail, *infra*.

Rule 27 of the Tennessee Rules of Appellate Procedure specifically provides that an appellant's brief "shall contain":

> An argument, which may be preceded by a summary of argument, setting forth:
>
> > A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, **with citations to the authorities and appropriate references to the record** (which may be quoted verbatim) relied on;
> > . . . .

Tenn. R. App. P. 27(a)(7) (emphasis added). Further, Rule 6 of the Rules of the Court of Appeals of Tennessee provides:

> (a)      Written argument in regard to each issue on appeal shall contain:
>
> > (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.
> > (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
> > (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
> > (4) **A statement of each determinative fact relied upon with citation to the record where evidence of each**

9

**such fact may be found.**

> (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. **No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.**

R. Tenn. Ct. App. 6 (emphasis added). Accordingly, no appellant may rely on factual assertions without indicating in its appellate brief where evidence of such facts may be found.

Airways' initial appellate brief is replete with factual references regarding documents without any indication as to the location of those documents in the technical record. Although Airways' reply brief generally corrects the error in the initial brief, a reply brief simply is not a substitute for an initial brief to this Court. *See Skinner v. Thomas*, No. M2007-01583-COA-R3-CV, 2008 WL 5204268, at *5 & n.7 (Tenn. Ct. App. Dec. 11, 2008) (involving situation wherein appellate made appropriate references to the record on appeal only in his reply brief; court held that while this action was in violation of the Tennessee Rules of Appellate Procedure, such rules could be suspended in "the interest of expediting a decision") (quoting Tenn. R. Ct. App. 1).

Our review is also hampered by the dearth of legal authority cited by Airways for many of its issues. Airways' table of authorities indicates that it cites only four different legal authorities in the entirety of its forty-two page brief. Our review of Airways' brief indicates that while very few legal authorities are cited, some that are cited are not included in the table of authorities section of Airways' brief, as required by Rule 27 of the Tennessee Rules of Appellate Procedure. *See* Tenn. R. App. P. 27(a)(2) (requiring the appellant to include "[a] table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited").

Our courts have repeatedly held that the failure to make appropriate references to the record on appeal or to cite to relevant legal authority to support an argument may result in a waiver of the argument on appeal. *See, e.g., Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011); *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009); *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 105 (Tenn. Ct. App. 2001); *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000); *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 210 (Tenn. Ct. App.

1994). As we recently stated: "Judges are not like pigs, hunting for truffles buried in briefs." *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at \*9 (Tenn. Ct. App. Feb. 4, 2015) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). "It is not the function of the appellate court to research and construct the parties' arguments." *Coleman*, 2015 WL 479830, at \*9 (citing *Dunkel*, 927 F.2d at 956). Accordingly, we keep these limitations in mind in considering Airways' argument on appeal.

## Mistake

Airways first argues that the trial court erred in "refusing to look to parol evidence despite contradictions and ambiguities in the Rooftop . . . Agreement." There are several deficiencies with regard to this section of Airways' brief. First, the only legal authority cited in this section of Airways' brief concerns the issue of mistake. Specifically, Airways' quotes the following passage from *Textron Financial Corp. v. Powell*, No. M2001-02588-COA-R3-CV, 2002 WL 31249913, at \*3–\*4 (Tenn. Ct. App. 2002):

> [A]pplication of the parol evidence rule includes many exceptions. . . . Once such exception to the parol evidence rule is that extrinsic evidence is admissible to show fraud or mistake. . . . In order to be admissible to show mistake, the mistake must be shown to be clerical or mutual, or, if unilateral, to have resulted from fraud or other inequitable conduct. 32A C.J.S. Evidence § 1234. A mutual mistake is one where both parties are operating under the same misconception. *Id.* The contract as written, therefore, is not an expression of the parties' actual intent. *Id.*.

*Textron*, 2002 WL 31249913, at \*5 (internal citations omitted).[2]

Based on the above language, we can only assume that this portion of Airways' brief contends that the trial court erred in failing to consider parol evidence regarding the parties' negotiations because there was a mistake as to the contract that was being agreed to by the parties. First, we note that Airways apparently refuses to admit that it had any part in the alleged mistake regarding the Rooftop Agreement, instead stating that dispute is solely attributable to "the unilateral mistake of Unison." As cited in their brief, however, a unilateral mistake will only be sufficient to reform a contract when it "resulted from fraud or other inequitable conduct." *Id.* However, there have been no allegations in this case that

---

[2] No reference to the *Textron* Opinion is included in the Table of Authorities section of Airways' appellate brief. In addition, Airways' quotation of this text omits internal citations, without giving any indication of the omission.

Unison engaged in any fraud or other misleading conduct in drafting the Rooftop Agreement. Thus, Airways' argument regarding a unilateral mistake is unavailing.

Furthermore, even if we were to conclude that the issue of mutual mistake was fairly raised by Airways' brief, we conclude that it is waived. In the very case cited by Airways on this issue, this Court held that any argument regarding mutual mistake must comply with Rule 9.02 of the Tennessee Rules of Civil Procedure, lest it be waived. *Textron*, 2002 WL 31249913, at *3–*4 (citing Tenn. R. Civ. P. 9.02). Rule 9.02 provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

A review of both Airways' initial answer and cross-claim, as well as its amended answer and cross-claim, however, indicate that mutual mistake was not raised as a defense to Double Eagle's assertions in the trial court. Accordingly, any argument concerning mutual mistake is waived by Airways' failure to comply with Rule 9.02 or otherwise raise this argument in the trial court. *See Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 670 (Tenn. 2013) (holding that an argument is waived if raised for the first time on appeal).

The other legal assertions raised in this section of Airways' appellate brief are wholly unsupported by citation to relevant legal authority. For example, Airways asserts:

> It is clear that the Rooftop [Agreement] represents the transfer of ownership rights (right, title and interest), which then allowed Unison to step in and assume the rights as landlord to the Cingular Lease and to begin collecting monthly rent from Unison. Such an assignment cannot be accomplished through a lease. If a private owner leases a house to a tenant, he has no right, during the existing term of the original lease, to lease the same property to another tenant, and give that tenant all of his rights as a landlord, especially without having some written agreement with the original tenant to subordinate his/her lease to a second-in-time tenant. Once a property is rented, it is rented, and can only change tenancy through sub-leasing or a termination of the original lease by agreement between the owner and the tenant. Thus, the Rooftop [Agreement] is ambiguous - while it is titled a "lease", it cannot operate as one,

12

and the Court must look to parol evidence to determine the intent between the parties to the Rooftop [Agreement].

This argument clearly invites this Court to make a legal conclusion regarding the effect, if any, of an existing lease on a subsequent lease. However, Airways cites no legal authority to support its contention that the Rooftop Agreement cannot constitute a lease because of the existing lease of the property. Furthermore, Airways cites no legal authority regarding the ambiguity exception to the parol evidence rule in this, or any other, section of its appellate brief. Thus, Airways' argument that the Rooftop Agreement must be found to be ambiguous because Airways could not lease the property to two tenants is simply unsupported by any legal authority.[3] Without citing legal authority on this issue, it is waived.

Thus, from our review, this section of Airways' brief urges this Court to consider parol evidence due to (1) mistake; and (2) ambiguity due to multiple tenants being granted leases in the same property. Because mistake was not properly raised, it is waived. Additionally, because Airways cites no legal authority to support its contentions with regard to the multiple leases on the property, this argument is also waived. Accordingly, the arguments raised in this section of Airways' appellate brief are without merit.

**Ambiguity**

Next, Airways argues that certain provisions contained in the Rooftop Agreement render the contract ambiguous, and therefore, the trial court erred in failing to resort to parol evidence. First, we note that Airways's brief contains citations to no legal authority regarding when parol evidence may be considered in the face of an ambiguous contract. Specifically, Airways fails to address Tennessee law that states that even where a contract is ambiguous, parol evidence may only be considered if the ambiguity remains after applying the pertinent rules of contract construction. Accordingly, a brief explanation of the law surrounding the ambiguity exception to the parol evidence rule is helpful:

All provisions of the contract should be construed in harmony with each other to promote consistency and avoid

---

[3] We note that the Rooftop Agreement makes it abundantly clear that other entities held legal interests in the property at issue. For example, the Rooftop Agreement indicates that while for some purposes, Unison shall have an exclusive lease of the property, it must comply with the obligations with any existing agreements concerning the rooftop property, i.e., the cell tower lease held by Cingular Wireless. Indeed, it appears to be undisputed that the Unison's purpose in entering into the Rooftop Agreement was to retain the rental payments made by Cingular Wireless for the use of the rooftop property. Additionally, for many purposes, the Rooftop Agreement indicates that Unison retains only non-exclusive rights to the property.

13

repugnancy among the various contract provisions. ***Teter v. Republic Parking Systems, Inc.,*** 181 S.W.3d 330, 342 (Tenn. 2005) . . . . The interpretation of an agreement is not dependent on any single provision, but upon the entire body of the contract and the legal effect of it as a whole. ***Aetna Cas. & Surety Co. v. Woods***, 565 S.W.2d 861, 864 (Tenn. 1978). The entire contract must be considered in determining the meaning of any or all of its parts. ***Id.***

In construing the contract, the trial court is to determine whether the language is ambiguous. ***Allstate Ins. Co.*** [***v. Watson***], 195 S.W.3d [609,] 611 [(Tenn. 2006)]; ***Planters Gin Co.***[***v. Fed. Compress & Warehouse Co., Inc.***], 78 S.W.3d [885,] 890 [(Tenn. 2002)]. If the language in the contract is clear and unambiguous, then the "literal meaning controls the outcome of the dispute." ***Allstate Ins. Co.***, 195 S.W.3d at 611; ***City of Cookeville, Tn. v. Cookeville Regional Med. Ctr.***, 126 S.W.3d 897, 903 (Tenn. 2004); ***Planters Gin Co.***, 78 S.W.3d at 890. "A contract term is not ambiguous merely because the parties to the contract may interpret the term in different ways." ***Staubach*** [***Retail Services-Southeast, LLC v. H.G. Hill***], 160 S.W.3d [521,] 526 [(Tenn. 2005)].

If, however, the language in a contract is susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the contract. ***Allstate Ins. Co.***, 195 S.W.3d at 611 (citing ***Planters Gin Co.***, 78 S.W.3d at 889–90). Contract language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." ***Allstate Ins. Co.***, 195 S.W.3d at 611 (quoting ***Farmers-Peoples Bank v. Clemmer***, 519 S.W.2d 801, 805 (Tenn.1975)).

If contractual language is found to be ambiguous, then a court must apply established rules of construction to ascertain the parties' intent. ***Allstate Ins. Co.***, 195 S.W.3d at 611–12 (citing ***Planters Gin Co.***, 78 S.W.3d at 890). "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact" appropriate for a jury. ***Planters Gin Co.***, 78 S.W.3d at 890. In that case, a factfinder may use extrinsic or parol evidence, such as the parties' course of conduct and statements, to guide

14

the court in construing the contract. ***Allstate Ins. Co.***, 195
S.W.3d at 612. If the contract is unambiguous, then the court
should not go beyond its four corners to ascertain the parties'
intention. ***Rogers v. First Tennessee Bank National Ass'n***, 738
S.W.2d 635, 637 (Tenn. Ct. App. 1987).

***Adkins v. Bluegrass Estates, Inc.***, 360 S.W.3d 404, 411–12 (Tenn. Ct. App. 2011) (quoting
***Shuttleworth, Williams, Harper, Waring & Derrick, PLLC v. Smith***, No. W2007-02295-
COA-R3-CV, 2010 WL 744375, at *2–3 (Tenn. Ct. App. March 5, 2010)).

Here, Airways points to several provisions in the Rooftop Agreement that it contends
show that the contract was intended to convey an easement. Specifically, Airways contends
that no lease was created by the Rooftop Agreement due to the omission of a term by which
Airways could terminate the lease and the inclusion of a term permitting Unison to enter into
agreements with other parties regarding the rooftop property with durations beyond the term
of Unison's lease. In addition, Airways asserts ambiguity is evident by the fact that the
Rooftop Agreement referred to the consideration for the use of the property as a purchase
price rather than rent. Finally, Airways points to a separate document executed by Unison
contemporaneously with the execution of the Rooftop Agreement, which document referred
to the transaction as the conveyance of an easement rather than the grant of a lease.

First, we note that Airways cites no law supporting its contentions that: (1) a contract
cannot constitute a lease without providing a specific term regarding termination by the
property owner; or (2) a lease cannot contain a provision that allows a tenant to enter into
contracts regarding the property that endure after the expiration of the tenant's contract with
the property owner. From our research, courts uniformly require that certain essential terms
must be provided for a valid lease to exist. However, courts often disagree as to which terms
are essential to a lease's validity. *See generally* 72 Am. Jur. 2d *Statute of Frauds* § 244
("'[W]hile the courts are agreed as to the general rule itself, the results of the application of
the rule are not completely harmonious,' sometimes due to 'a difference of opinion as to what
are 'the essential terms and conditions' of a lease agreement[.]''"). Many courts often require
the following terms be expressed: "a definite agreement as to the extent and boundary of the
property to be leased—to a definite and agreed term, including a defining of the beginning of
the term, and to a definite and agreed rental and time and manner of its payment." ***Id.***; *see
also* 49 Am. Jur. 2d *Landlord and Tenant* § 22 ("In order to be valid and enforceable, a lease
generally must contain the following essential terms: (1) the names of the parties; (2) a
description of the demised realty; (3) a statement of the term of the lease; and (4) the rent or
other consideration."). Tennessee courts have likewise indicated that the term and rental
amount for a lease are essential terms. *See generally* ***Engenius Entertainment, Inc. v.***

15

*Herenton*, 971 S.W.2d 12, 18 (Tenn. Ct. App. 1997) (noting that in the absence of an agreement regarding the rental term and consideration, no rental agreement was created between the parties); ***Rode Oil Co., Inc. v. Lamar Advertising Co.***, No. W2007-02017-COA-R3-CV, 2008 WL 4367300, at *7 (Tenn. Ct. App. Sept. 18, 2008) (indicating that a term requiring the tenant to pay rent was an essential term to a lease). Our research has revealed no cases wherein a provision to terminate the lease by the property owner was held to be an essential term, nor where including a provision in an otherwise valid lease permitting the tenant to bind the property owner to contracts beyond the term of the original lease invalidated the original lease. Here, the Rooftop Agreement expressly provides that it shall commence on the "effective date" provided therein, that it shall continue for a term of thirty years, and that the contract is made "for and in consideration of the sum of Ten and No/100 Dollars and other good and valuable consideration."[4] Thus, the Rooftop Agreement clearly contains all of the essential terms required to form a lease. Respectfully, this argument, therefore, fails.

Moreover, we conclude that the fact that the consideration for the contract was characterized as a purchase price does not undermine the clear language in the Rooftop Agreement indicating that the parties were entering into a lease. First, Airways cites no law that indicates that characterizing the consideration for an interest in property as a purchase price automatically takes the transaction out of the realm of a lease. Our research has revealed no caselaw wherein parties were prevented from pre-paying their rental obligations under a lease. Instead, courts faced with similar agreements have not indicated that this scheme is invalid. *See **Equitec Real Estate Investors Fund XII v. Poplar Pike***, No. 02A01-9506-CH-00127, 1996 WL 460269, at 1 (Tenn. Ct. App. Aug. 15, 1996); *see also* 72 Am. Jur. 2d *Statute of Frauds* § 244 (indicating that an essential term is "payment"); 49 Am. Jur. 2d *Landlord and Tenant* § 22 (indicating that "rent or other consideration" are essential terms in a lease). Furthermore, courts are directed to consider contracts as a whole, rather than only isolated parts, to determine whether an ambiguity exists. As this Court explained in ***Adkins v. Bluegrass Estates***, ***Inc.***:

> A word or expression in the contract may, standing alone, be capable of two meanings and yet the contract may be unambiguous. Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be

---

[4] There is no dispute that the "other good and valuable consideration" constitutes a $135,000 payment to Airways by Unison.

16

> construed in the context of that instrument as a whole, and in the
> circumstances of that case, and cannot be found to be ambiguous
> in the abstract.

*Adkins*, 360 S.W.3d at 412–13. Here, the term "lease" is used in the Rooftop Agreement more than sixty-five times. The term "easement" is simply not used in the agreement. It is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents. *See Giles v. Allstate Ins. Co.,* 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993); *see also Beasley v. Metro. Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146, 148 (1950). To hold otherwise would make contracts not "'worth the paper on which they are written.'" *Beasley*, 229 S.W.2d at 148 (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875)). The representative of Airways does not dispute that he was furnished a copy of the Rooftop Agreement, which he signed voluntarily. This contract repeatedly refers to the agreement as governing a lease. Accordingly, we decline to hold that the characterization of the consideration for the agreement as the purchase price in a few provisions of the agreement voids the clear import of the contract to grant a lease to Unison.[5]

Finally, Airways argues that the document entitled Assignment of Easement executed by Unison contemporaneously to the execution of the Rooftop Agreement signifies the parties' intent to convey an easement to Unison. We note, however, that the Rooftop Agreement contains an unambiguous merger clause providing that: "This Agreement and all Exhibits attached hereto constitute the entire agreement and understanding of [Airways] and Unison with respect to the subject matter of this Agreement . . . ." The Assignment of Easement document was not included as an exhibit to the Rooftop Agreement. As previously discussed, in order to determine whether an ambiguity exists, this Court may consider only the four corners of the document. *See Adkins*, 360 S.W.3d at 412 ("If the contract is unambiguous, then the court should not go beyond its four corners to ascertain the parties' intention.") (citing *Rogers*, 738 S.W.2d at 637 ("In order to create an ambiguity in [the

---

[5] Airways also points to documents outside the contract that concern the purchase price, including a final settlement sheet that lists Airways as the seller and Unison as the Buyer. Airways argues that "if the Rooftop [Agreement] w[as] in fact a lease, any documentation relating to the Rooftop [Agreement] would designate Unison as the 'tenant/lessee' and Airways as the 'landlord/lessor.'" In its appellate brief, Airways includes no reference to where this document is located in the appellate record. We have reviewed the document, however, and conclude that this designation of the parties is insufficient to contradict the clear import of the Rooftop Agreement to grant a lease to Unison. Further, Airways offers no analysis as to why this document, which is not specifically referenced in the Rooftop Agreement, should be considered to determine whether an ambiguity exists. *See generally McCall v. Towne Square*, Inc., 503 S.W.2d 180, 183 (Tenn. 1973) ("Other writings, or matters contained therein, **which are referred to in a written contract** may be regarded as incorporated by reference as a part of the contract and therefore, may be properly considered in the construction of the contract.") (emphasis added) (quoting 17 Am.Jur.2d, *Contracts* §§ 263–65)).

contract] it is necessary to go outside the four corners of the instruments. Under the circumstances here, we cannot do so. Courts must determine and effectuate the intention of the parties to a contract as expressed in the four corners of the contract. . . . Neither the parties nor the courts may create an ambiguity in the contract when no such ambiguity exists and then apply rules of construction to favor one party to the agreement.") (internal citations omitted)). Thus, parol evidence may only be considered if an ambiguity exists that cannot be resolved by resorting to the rules of construction. While it is true that additional documents may sometimes be construed as part of a written agreement when they are part of the same transaction, *see generally* 11 *Williston on Contracts* § 30:25 (4th ed.), Airways does not advance this argument. Instead, in its reply brief, Airways clearly states that the Assignment of Easement is "parol evidence for the Court to examine due to the ambiguity of the Rooftop [Agreement]." Because this Court has discerned no ambiguity in the Rooftop Agreement based on Airways' appellate arguments, we simply cannot consider the Assignment of Easement to vary the clear import of the Rooftop Assignment to create a lease.

Based on the foregoing, we conclude that the trial court did not err in refusing to consider parol evidence and in concluding, based on the express terms of the Rooftop Agreement, that the contract between Unison and Airways was a lease that was subject to proration pursuant to the Purchase Contract.

**Due Diligence**

Next, Airways argues that the trial court erred in failing to find that Double Eagle had a duty to "exercise due diligence in researching the terms by which it would be bound under the agreement" prior to entering into the Purchase Contract. Again, Airways cites no law that places a duty on a purchaser of real property to investigate title issues prior to executing a contract for its purchase. Instead, the only law cited in this section of Airways' appellate brief concerns whether Double Eagle had actual or constructive notice of the contract after viewing the cell towers on the roof, and whether Double Eagle properly exercised its duty to mitigate its damages. Furthermore, Airways' own legal expert, O. Douglas Shipman, a seasoned real estate attorney, testified that a title search can reasonably be performed before or after the execution of a contract. This testimony was consistent with the testimony of Double Eagle's legal expert, James M. Smith, who testified that title work is typically done after the execution of a contract. Because Airways offers no legal authority to dispute this testimony in its appellate brief, we must conclude that Double Eagle did not act unreasonably in delaying title research until after the execution of the Purchase Contract.

**Attorney's Fees**

18

We next consider both parties' arguments with regard to attorney's fees. First, Airways argues that the trial court's award of attorney's fees to Double Eagle as the prevailing party should be reversed "should the judgment be overturned." Because we have affirmed the trial court's judgment with regard to the merits of this case, Airways' argument is moot. Next, Double Eagle contends that, as the prevailing party in a suit related to the Purchase Contract, it should be awarded attorney's fees incurred on appeal pursuant to the attorney fee provision in the Purchase Agreement. We agree and remand this matter to the trial court for the determination of Double Eagle's reasonable attorney's fees incurred on appeal.

## Conclusion

The judgment of the Shelby County Chancery Court is affirmed and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to appellant, Airways Commons, LLC, and its surety.

_____
J. STEVEN STAFFORD, JUDGE

19